# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

————————

No. 13-50768

————————

United States Court of Appeals
Fifth Circuit

**FILED**

May 14, 2015

Lyle W. Cayce
Clerk

ALEJANDRO GARCIA DE LA PAZ,

Plaintiff - Appellee

v.

JASON COY, United States Customs and Border Protection Officer;
MARIO VEGA, United States Customs and Border Protection Officer,

Defendants - Appellants

_____

Cons w/ 14-10018

DANIEL FRIAS,

Plaintiff - Appellee

v.

ARTURO TORREZ, United States Customs and Border Protection Officer,
formerly known as John Doe,

Defendant - Appellant

————————————————

Appeal from the United States District Court
for the Western District of Texas

No. 13-50768
No. 14-10018

Appeal from the United States District Court
for the Northern District of Texas

————————————

Before JOLLY and JONES, Circuit Judges, and GODBEY, District Judge.*

EDITH H. JONES, Circuit Judge:

Customs and Border Patrol ("CBP") agents apprehended Daniel Frias and Alejandro Garcia de la Paz, both illegal aliens, in separate incidents miles from the U.S.-Mexico border, in the heart of Texas. Both allege that the agents stopped them only because they are Hispanic. Represented by the same attorney, both filed *Bivens* suits against the arresting agents, alleging Fourth Amendment violations. On appeal, both cases present the same fundamental question: can illegal aliens pursue *Bivens* claims against CBP agents for illegally stopping and arresting them? This question has not been squarely faced in our circuit, although two other circuits have held in the negative. *Mirmehdi v. United States*, 689 F.3d 975 (9th Cir. 2011) (no *Bivens* claim for constitutionally invalid immigration detention); *Arar v. Ashcroft*, 585 F.3d 559 (2d Cir. 2009) (en banc) (no *Bivens* claim regarding extraordinary rendition of alien). Like those courts, we conclude that *Bivens* actions are not available for claims that can be addressed in civil immigration removal proceedings. Accordingly, we **REVERSE** and **REMAND** with instructions to dismiss both actions against the individual officers.

————————————

* District Judge of the Northern District of Texas, sitting by designation.

2

No. 13-50768
No. 14-10018

## BACKGROUND

*Frias's Stop and Arrest.*  On April 28, 2010 Frias and a colleague were travelling on I-20 about twenty miles east of Abilene, heading west toward Baird, Texas.  The two men were in a four-door Dodge pickup truck modified to carry heavy loads.  At the same time, CBP agent Arturo Torrez was driving eastbound on I-20 toward Dallas.  As Frias's truck passed, Torrez noticed what looked like bodies lying in the backseat.  Torrez also observed that the truck had a large shielded rear bed.  Torrez immediately turned his vehicle around to follow the truck.  After Torrez caught up, he radioed for a "1028" to determine the vehicle's origin.  He then maneuvered his vehicle alongside Frias's to look inside.  There, Torrez again saw what looked like bodies lying in the backseat.  When the "1028" revealed that the truck was not from the area, Torrez knew enough.  He maneuvered his vehicle behind the truck and turned on his emergency lights.  At the time of the stop, the men were about 250 miles from the U.S.-Mexico border.  After a brief interrogation, Frias admitted he was an illegal alien and was taken into custody.  Although the reason does not appear in the record, Frias's immigration proceedings have been terminated.

As a result of his stop and arrest, Frias brought five claims against the U.S. Government and Torrez.  His first two claims sought declaratory relief under the Declaratory Judgment Act, 28 U.S.C. § 2201, and the Administrative Procedures Act, 5 U.S.C. §§ 500-596.  Third, he brought a *Bivens* claim against Torrez individually, alleging that Torrez violated the Fourth Amendment because he lacked reasonable suspicion for the stop and probable cause for Frias's arrest.  The fourth and fifth claims were brought under the Federal Tort Claims Act, 28 U.S.C. §§ 2671-2680, against the government for false imprisonment and assault.

No. 13-50768
No. 14-10018

Both the government and Torrez moved to dismiss the complaint. Torrez argued that the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1101, *et seq.*, makes a *Bivens* claim unavailable and asserted qualified immunity. The district court disagreed, holding that the INA does not preclude a *Bivens* claim. It postponed ruling on qualified immunity until the summary judgment phase. In response to Torrez's summary judgment motion, the court held definitively that Torrez does not have qualified immunity. He timely appealed.

*Garcia's Stop and Arrest.*[1] On October 11, 2010, Garcia and three others left their worksite near Vanderpool, Texas in a red Ford F-150 extended-cab pickup truck, travelling north on Ranch Road 187. The men were heading for San Antonio, from which their travel originated. As the four men travelled north, they passed CBP Agents Coy and Vega who were travelling south on Ranch Road 187 in separate vehicles. When the truck then turned east onto Ranch Road 337, Coy and Vega decided to follow it. Sometime thereafter, and about 100 miles from the U.S.-Mexico border, the agents decided to stop the truck. During the ensuing stop, agent Vega asked Garcia if he was a U.S. citizen. Garcia "answered his question"[2] and was apprehended. During oral

---

[1] Because Agents Coy and Vega appeal the denial of their motion to dismiss, these facts are taken from Garcia's complaint.

[2] This language comes from Garcia's complaint. We note, however, that this type of evasive pleading is insufficient to defeat qualified immunity for his arrest. "[T]here must not even arguably be probable cause . . . for immunity to be lost." *Brown v. Lyford*, 243 F.3d 185, 190 (5th Cir. 2001) (internal citation and quotation marks omitted). Simply stating that Garcia "answered [Vega's] question" does not show that the agents lacked arguable probable cause to arrest him. As Justice Brandeis said:

> [T]here is no rule of law which prohibits officers charged with the administration of the immigration law from drawing an inference from the silence of one who is called upon to speak . . . . A person arrested . . . is not protected by a presumption of citizenship comparable to the presumption of

No. 13-50768
No. 14-10018

argument in this court, we were informed that Garcia's immigration proceedings were administratively closed.

Subsequently, Garcia sued Coy, Vega, and the U.S. Government. Like Frias, Garcia asserted claims under the Declaratory Judgment Act and the Administrative Procedures Act; claims against the government under the Federal Tort Claims Act for false imprisonment and assault; and *Bivens* claims against the agents individually for unlawfully stopping and arresting him. Coy and Vega moved to dismiss the *Bivens* claims, arguing, like Torrez, that the INA precludes Garcia's *Bivens* claims and that they have qualified immunity. The district court refused to dismiss, holding that the INA does not preclude Garcia's *Bivens* claims and that the agents do not have qualified immunity. They timely appealed.

**JURISDICTION AND STANDARD OF REVIEW**

This court reviews *de novo* denials of qualified immunity. *Brown v. Miller*, 519 F.3d 231, 236 (5th Cir. 2008); *Hampton v. Okitbbeha Cnty. Sherriff Dep't*, 480 F.3d 358, 364 (5th Cir. 2007). Our jurisdiction over qualified immunity appeals extends to "elements of the asserted cause of action" that are "directly implicated by the defense of qualified immunity[,]" including whether to recognize new *Bivens* claims. *Wilkie v. Robbins*, 551 U.S. 537, 549 n.4, 127 S. Ct. 2588, 2597 (2007) (quoting *Hartman v. Moore*, 547 U.S. 250, 257 n.5, 126 S. Ct. 1695, 1702 (2006)). On appeal from a motion to dismiss, this

---

innocence in a criminal case. There is no provision which forbids drawing an adverse inference from the fact of standing mute.

*U.S. ex rel. Bilokumsky v. Tod,* 263 U.S. 149, 154, 44 S. Ct. 54, 56 (1923) (internal citation omitted). As a result, border patrol agents can rightfully assume that when a suspected alien conceals his status, either by standing silent or answering evasively, he is in fact in this country illegally. Therefore, Garcia's pleadings fail to overcome qualified immunity.

No. 13-50768
No. 14-10018

court accepts all well-pleaded facts as true and views them in the light most favorable to the plaintiff. *Brown*, 519 F.3d at 236. When this court reviews a denial of qualified immunity at the summary judgment stage, it does not assess the district court's factual findings, but decides whether those facts are material and whether, based on the undisputed material facts, the agents have qualified immunity. *Hampton*, 480 F.3d at 364.

## DISCUSSION

On appeal, the agents present two issues. First, they argue that the INA and special factors bar *Bivens* claims in the immigration context. Alternatively, the agents assert qualified immunity, not for the traffic stops (at this stage), but only for the aliens' arrests and detentions. Because we hold that aliens involved in civil immigration enforcement actions cannot sue the arresting agents for simply stopping and detaining them, we need not decide whether the agents have qualified immunity.[3]

In *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388, 91 S. Ct. 1999 (1971), the Supreme Court created a damage

---

[3] There are, however, compelling arguments in favor of granting qualified immunity to the border patrol agents for the arrests and detention of the aliens. Frias admitted to the agent that he was illegally present in the United States. Contrary to the district court's analysis, which purported to rely on a lack of probable cause, on summary judgment the alien had to overcome the burden of showing that "no reasonable agent" would have concluded that probable cause existed for Frias's detention. *Brown*, 243 F.3d at 190. And Garcia pleads only that he "answered" the agent's question about his nationality or presence, thereby precipitating his arrest. Following Justice Brandeis's reasoning in fn. 2 *supra*, courts need not turn a blind eye, even at the pleading stage, to clever evasions of a simple immigration inquiry.

Moreover, both plaintiffs err in arguing that their arrests lacked probable cause where the answers to the agents' questions were "fruit of the poisonous tree" of their traffic stops. No court has yet applied this criminal law doctrine to civil cases like immigration proceedings, *see I.N.S. v. Lopez-Mendoza*, 468 U.S. 1032, 1051, 104 S. Ct. 3479, 3489 (1984); *see also Townes v. City of New York*, 176 F.3d 138, 146 (2d Cir. 1999).

6

remedy against individual federal law enforcement officers who allegedly conducted a warrantless search of a suspect's home and arrested him without probable cause. The cause of action, the Court said, flowed from the necessity to enforce the Fourth Amendment in circumstances where the victim had no effective alternative remedy. *Bivens* established that, in certain circumstances, "the victims of a constitutional violation by a federal agent have a right to recover damages against the official in federal court despite the absence of any statute conferring such a right." *Carlson v. Green*, 446 U.S. 14, 18, 100 S. Ct. 1468, 1471 (1980).

Garcia and Frias predicate their claim on an analogy between the Fourth Amendment violations they allegedly endured and the facts in *Bivens*. They thus equate civil immigration enforcement actions with federal criminal law enforcement. These propositions fail to account for subsequent holdings of the Supreme Court, which have narrowed and reframed *Bivens* in the course of rejecting nearly all other claims for an implied damage remedy against federal officers or agents. In particular, the Court has rejected treating *Bivens* on an amendment-by-amendment basis. *Compare Davis v. Passman*, 442 U.S. 228, 99 S. Ct. 2264 (1979) (allowing a *Bivens* remedy for a congressional employee's Fifth Amendment claim) *with Schweiker v. Chilicky*, 487 U.S. 412, 108 S. Ct. 2460 (1988) (rejecting a *Bivens* remedy for Social Security recipient's Fifth Amendment claim). Instead of an amendment-by-amendment ratification of *Bivens* actions, courts must examine each new context—that is, each new "potentially recurring scenario that has similar legal and factual components." *Arar*, 585 F.3d at 572.

The Supreme Court's later cases have disavowed that a *Bivens* suit is "an automatic entitlement;" in fact, it is disfavored. *Wilkie*, 551 U.S. at 550, 127 S. Ct. at 2597; *see also Corr. Servs. Corp. v. Malesko*, 534 U.S. 61, 75,

122 S. Ct. 515, 524 (2001) (Scalia, J., concurring) ("*Bivens* is a relic of the heady days in which this Court assumed common-law powers to create causes of action—decreeing them to be 'implied' by the mere existence of a statutory or constitutional prohibition. As the Court points out, we have abandoned that power to invent 'implications' in the statutory field. There is even greater reason to abandon it in the constitutional field, since an 'implication' imagined in the Constitution can presumably not even be repudiated by Congress." (internal citations omitted)). The Court has not created a new *Bivens* remedy in the last thirty-five years, although "it has reversed more than a dozen appellate decisions that had created new actions for damages." *Vance v. Rumsfeld*, 701 F.3d 193, 198 (7th Cir. 2012) (en banc). Moreover, because *Bivens* suits implicate grave separation of powers concerns, "a decision to create a private right of action is one better left to legislative judgment in the great majority of cases." *Sosa v. Alvarez-Machain*, 542 U.S. 692, 727, 124 S. Ct. 2739, 2762-63 (2004) (citing *Malesko*, 534 U.S. at 68, 122 S. Ct. at 520). As a result, courts must "respond[ ] cautiously to suggestions that *Bivens* remedies be extended." *Schweiker*, 487 U.S. at 421, 108 S. Ct. at 2467.

Frias and Garcia contend, however, that this court has already extended *Bivens* to include claims against border patrol agents for unlawful stops and arrests. If they are correct, this panel is bound by our precedent. If not, we must apply the Supreme Court's reasoning in the *Bivens* line of cases, taken as a whole, and decide whether to extend *Bivens*. As it happens, there are two reasons why prior decisions of this court do not cover the present claims.

First, according to black letter law, "a question not raised by counsel or discussed in the opinion of the court" has not "been decided merely because it existed in the record and might have been raised and considered." *United States v. Mitchell*, 271 U.S. 9, 14, 46 S. Ct. 418, 420-21 (1926); s*ee also* HENRY

No. 13-50768
No. 14-10018

CAMPBELL BLACK, HANDBOOK ON THE LAW OF JUDICIAL PRECEDENTS, OR, THE SCIENCE OF CASE LAW 37 (1912). This is precisely what happened in this court's prior cases, where the parties never raised—and this court never decided—whether border patrol agents can be *Bivens* defendants. On the same basis, the Ninth Circuit, while noting that prior panels of that court had assumed but not actually decided the existence of a *Bivens* claim, recently held that *Bivens* claims are unavailable to immigrants in removal proceedings. *See Mirmehdi*, 689 F.3d at 980 n.2 ("The Mirmehdis argue that we have, in fact, recognized an immigrant's right to pursue a *Bivens* action . . . . But because [our] cases . . . did not squarely present the issue, it remains open.").

In *Martinez-Aguero v. Gonzalez*, an alien who was detained and physically abused at the U.S.-Mexico border brought a *Bivens* suit against the arresting INS patrol agent.[4] 459 F.3d 618, 620 (5th Cir. 2006). On appeal, the agent argued that because of the "entry fiction," which treats removable aliens as stopped at the border despite their physical presence in the U.S., Martinez-Aguero "had no constitutional rights at the time of the alleged incident." *Id.* at 622. This court, therefore, only addressed whether the entry fiction applied. *Id.* at 623. The agent did not challenge whether illegal aliens are entitled to a *Bivens remedy*, but instead contended that they have no *right* at all. In allowing the claim to proceed, this court had no occasion to consider whether *Bivens* might not apply.

---

[4] Before 2003, border security was split among various federal agencies including the Immigration and Naturalization Service (now USCIS). The Homeland Security Act of 2002, Pub. L. No. 107-296 (2002), consolidated the agencies responsible for border security. Since then, the CBP has primary responsibility over border security. Our decision in no way turns on nomenclature, however. The same analysis applies to all federal agents engaged in immigration enforcement.

No. 13-50768
No. 14-10018

Moreover, the court in *Martinez-Aguero* relied on *Lynch v. Cannatella*, a prior decision that assumed the existence of *Bivens* suits for physical abuse perpetrated against immigration detainees. 810 F.2d 1363, 1369-70 (5th Cir. 1987). *Lynch*'s analysis, as the later panel acknowledged, may be in some tension with ensuing pronouncements of the Supreme Court, but our panel found its conclusion binding. *See Martinez-Aguero*, 459 F.3d at 623-25. We must consequently defer to both of these prior decisions, to the extent that they permit *Bivens* actions against immigration officers who deploy unconstitutionally excessive force when detaining immigrants on American soil. "There are . . . no identifiable national interests that justify the wanton infliction of pain." *Martinez-Aguero*, 459 F.3d at 623 (citing *Lynch*, 810 F.2d at 1373-74).[5] This case is distinguishable from *Lynch* and *Martinez-Aguero* because it involves no allegations of excessive force.

The additional published precedent relied on by Garcia and Frias*, Humphries v. Various USINS Employees,* likewise did not address the availability of *Bivens* suits against border patrol agents. 164 F.3d 936 (5th Cir. 1999). In *Humphries*, the pro se plaintiff's complaint "consist[ed] of numerous handwritten pages" which "as a whole [were] difficult to understand." *Id.* at 938. Although "[t]he exact contours of [Humphries's] claims [were] difficult to discern," the Kenyan citizen brought a *Bivens* suit against federal agents, alleging among other things that they mistreated him while in immigration detention and forced him to work under threat of deportation. *Id.* at 939. A magistrate judge recommended that the claims be dismissed under *Heck v.*

---

[5] Under the Lynch rationale, *Martinez-Aguero* also allowed the plaintiff's claim for "false arrest" to proceed under *Bivens*. 459 F.3d at 625-26. That claim, however, challenged her arrest for the crime of interfering with a law enforcement officer and did not, as here, involve civil immigration enforcement. *Id.* (citing 18 U.S.C. § 111).

*Humphrey*, 512 U.S. 477, 114 S. Ct. 2364 (1994), because they would contradict an immigration judge's removal[6] decision. *Id.* This issue—whether *Heck* operated in the removal context—was one of first impression. *Id.* at 940. Humphries's court-appointed counsel argued, and this court decided only that *Heck* did not bar his claims. *Id.* at 946. To make a long story short, the parties never discussed and this court had no reason to decide whether *Bivens* extends to civil immigration proceedings.

The same is true of the non-precedential, non-binding, unpublished decisions on which Frias and Garcia rely. In none of those cases did the agents contend that plaintiffs could not sue them under *Bivens*. *See Rynearson v. United States*, No. 13-51114, 2015 WL 795784, at *4 (5th Cir. Feb. 26, 2015) ("Rynearson argues the [CBP] agents violated his Fourth Amendment rights by being 'intentionally dilatory' in waiting too long to ask about his citizenship, intentionally extending the duration of his detainment, and calling his military base to inquire into his military status."); *Pelayo v. U.S. Border Patrol Agent No. 1*, 82 F. App'x 986 (5th Cir. 2003) (unpublished) ("The defendants argue that plaintiff failed to allege the violation of a constitutional right because Brand, Stone, and Garza were not personally involved in any alleged deprivation. They further argue that Labadie was entitled to qualified immunity because his actions were objectively reasonable"); *Ramirez v. United States*, 999 F.2d 1579 (5th Cir. 1993) (unpublished) ("The agents do not dispute that Linares has alleged a violation of his constitutional right to be free from the use of excessive force. They contend, instead, that the district court applied

---

[6] Before the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRIRA"), Pub. L. No. 105-201, 110 Stat. 3009 (1996), removal was described as either "exclusion" or "deportation." *Humphries*, 164 F.3d at 939 n.1. The Humphries decision uses the term "exclusion" throughout. For simplicity's sake, we will use "removal" here.

an incorrect legal standard in determining qualified immunity *vel non.*" (footnote omitted)).

Consequently, this court's past cases have not decided whether *Bivens* extends to claims arising from civil immigration apprehensions and detentions, other than those alleging unconstitutionally excessive force. Two sister circuits, as noted, have specifically found that deportation proceedings and extraordinary rendition under the immigration law constitute new contexts under *Bivens* and have declined to impose judicially created remedies in those situations. *Arar*, 585 F.3d at 564 ("This opinion holds that 'extraordinary rendition' is a context new to *Bivens* claims . . . [and] in the context of extraordinary rendition, hesitation [in creating a *Bivens* remedy] is warranted by special factors"); *Mirmehdi*, 689 F.3d at 981 ("Deportation proceedings are such a context, unique from other situations where an unlawful detention may arise.").[7] As the following discussion indicates, we agree with those conclusions.

I.

The Supreme Court has explained that federal courts may not step in to create a *Bivens* cause of action if "any alternative, existing process for protecting the interest amounts to a convincing reason for the Judicial Branch to refrain from providing a new and freestanding remedy in damages." *Wilkie*, 551 U.S. at 550, 127 S. Ct. at 2598. Even if no such alternative process exists,

---

[7] The district court in Garcia's case stated that *Mirmehdi* is a decision narrowly limited to detention pending removal proceedings, whereas this case concerns conduct that precedes detention. We disagree. *Mirmehdi* characterized the "new context" of the sought-for *Bivens* claim as "deportation proceedings." 689 F.3d at 981. The Supreme Court recognizes that the deportation process "ordinarily begins with a warrantless arrest." *Reno v. Flores*, 507 U.S. 292, 307, 113 S. Ct. 1439, 1449 (1993). Moreover, as we discuss below, immigration law is just as concerned with pre-detention procedures as with post-arrest removal proceedings.

however, a court "must make the kind of remedial determination that is appropriate for a common-law tribunal, paying particular heed, however, to any special factors counselling hesitation before authorizing a new kind of federal litigation." *Id.* We conclude that there is both an alternative process for protecting the Fourth Amendment rights of illegal aliens subjected to unconstitutional traffic stops and arrests, and special factors require denying a *Bivens* remedy for their claims arising out of civil immigration enforcement proceedings.

## A.

The point of examining the existing process is to determine whether Congress has explicitly or implicitly indicated "that the Court's power should not be exercised." *Bush v. Lucas*, 462 U.S. 367, 378, 103 S. Ct. 2404, 2411 (1983). The central question in this inquiry, therefore, is whether "an elaborate remedial system that has been constructed step by step, with careful attention to conflicting policy considerations, should be augmented by the creation of a new judicial remedy." *Id.* at 388, 103 S. Ct. at 2417. Because the INA comprises just such an elaborate remedial scheme, it precludes creation of a *Bivens* remedy.

As the Supreme Court has acknowledged "[f]ederal governance of immigration and alien status is extensive and complex." *Arizona v. United States*, --- U.S. ---, 132 S. Ct. 2492, 2499 (2012). For example, the INA intricately prescribes removal procedures. Aliens are entitled to notice of the initiation of removal proceedings, 8 U.S.C. § 1229(a)(1), bond, *id.* § 1226(a)(2), an adversarial removal hearing, *id.* § 1229a(b)(4), and the right to appeal, *id.* § 1252. At the removal hearing, individuals have a right to representation by competent counsel, *id.* § 1229a(b)(4)(A), the right to examine the evidence against them, *id.* § 1229a(b)(4)(B), and the right to present evidence, *id.* An

No. 13-50768
No. 14-10018

individual dissatisfied with the result of the removal hearing may pursue multiple levels of appellate review. Initially, individuals can appeal to the Board of Immigration Appeals. 8 C.F.R. § 1003.1(b). Under some circumstances, the Attorney General can review the decisions of the BIA. 8 C.F.R. § 1003.1(h)(1)(i)-(iii). If that fails, an individual can seek review in federal court. 8 U.S.C. § 1252. In limited circumstances, further review is available in a habeas corpus proceeding. IRA J. KURZBAN, KURZBAN'S IMMIGRATION LAW SOURCEBOOK 1501 (14th ed.).

The INA also includes provisions specifically designed to protect the rights of illegal aliens. Border patrol agents can only search a person or his possessions if they "have reasonable cause to suspect that grounds exist for denial of admission to the United States . . . which would be disclosed by such search." 8 U.S.C. § 1357(c). They can only make an arrest if they "ha[ve] reasonable grounds to believe that the person to be arrested has committed or is committing" a felony or immigration violation. 8 U.S.C. § 1357(a)(2)-(5); *see also* 8 C.F.R. § 287.8(c)(2)(i) ("An arrest shall be made only when the designated immigration officer has reason to believe that the person to be arrested has committed an offense against the United States or is an alien illegally in the United States."). And even if an agent has reasonable belief, before making an arrest, there must also be "a likelihood of the person escaping before a warrant can be obtained for his arrest." 8 U.S.C. § 1357(a)(2), (5); *see also* 8 C.F.R. § 287.8(c)(2)(ii) ("A warrant of arrest shall be obtained except when the designated immigration officer has reason to believe that the person is likely to escape before a warrant can be obtained."). Once apprehended, "the person arrested shall be taken without unnecessary delay before the nearest available officer empowered to commit persons charged with offenses against the laws of the United States." 8 U.S.C. § 1357(a)(4); *see also* 8 U.S.C.

§ 1357(a)(2) (requiring aliens arrested for immigration violations to be brought before an immigration officer "without unnecessary delay" to examine their right to enter or remain in the United States).

In immigration proceedings, unlike criminal prosecutions, there is no exclusionary rule for illegally seized evidence. *Lopez-Mendoza*, 468 U.S. at 1050, 104 S. Ct. at 3489. Nevertheless, evidence seized under egregious circumstances may be suppressed. *Id.* at 1050-51, 104 S. Ct. at 3489. An alien who succeeds in a suppression motion may achieve a substantial victory in the termination of the removal proceedings.

Even without a mandatory exclusionary rule, the INA maintains its own standards of conduct by training individuals in those standards and "establish[ing] an expedited, internal review process for violations of such standards." 8 U.S.C. § 1357(a)(5). Given this mandate, the Department of Homeland Security ("DHS") has developed a process to review alleged Fourth Amendment violations. 8 C.F.R. § 287.10(a). Complaints that agents violated the INA or standards of conduct "shall be referred promptly for investigation" and that investigation must occur "expeditiously." 8 C.F.R. § 287.10(c), (a). At the conclusion of an investigation, "the investigative report shall be referred promptly for appropriate action." 8 C.F.R. § 287.10(c). Agents may be prosecuted criminally for violating aliens' rights against excessive force. *See United States v. Brugman*, 364 F.3d 613, 614 (5th Cir. 2004) (affirming the conviction of a border patrol agent for violating 18 U.S.C. § 242).

Despite all these protections, Frias and Garcia argue that the INA fails adequately to protect their Fourth Amendment interests because it does not provide a damages remedy against individual agents. This is a misreading of the case law. The INA need not provide an exact equivalent to *Bivens*. *See Malesko*, 534 U.S. at 69, 127 S. Ct. 520 ("So long as the plaintiff had an avenue

for some redress, bedrock principles of separation of powers foreclosed judicial imposition of a new substantive liability.").[8]  Further, in the face of a due process claim that Social Security benefits were mishandled and the plaintiff was deprived of them for a significant period of time, the Court rejected crafting a *Bivens* damage remedy because "Congress has provided what it considers adequate remedial mechanisms for constitutional violations." *Schweiker*, 487 U.S. at 423, 108 S. Ct. at 2468.  This it has done in the INA. The absence of monetary damages in the alternative remedial scheme is not ipso facto a basis for a *Bivens* claim.

A fair reading of legislative developments pertaining to immigration leads ineluctably to the conclusion that Congress's failure to provide an individual damages remedy "has not been inadvertent."  *Schweiker*, 487 U.S. at 423, 108 S. Ct. at 2468.  Since the INA was enacted in 1952, Congress has frequently amended it, demonstrating that "the Judiciary [should] stay its *Bivens* hand."  *Wilkie*, 551 U.S. at 554, 127 S. Ct. at 2600; *see e.g.*, Immigration and Nationality Act of 1965, Pub. L. No. 89-236, 79 Stat. 911 (1965); Immigration and Nationality Act Amendments of 1976, Pub. L. No. 94-571, 90 Stat. 2703 (1976); Immigration Reform and Control Act of 1986, Pub. L. No. 99-603, 100 Stat. 3359 (1986); Immigration Act of 1990, Pub. L. No. 101-649, 104 Stat. 4978 (1990); Illegal Immigration Reform and Responsibility Act of 1996, Pub. L. No. 104-208, 110 Stat. 3009-54 (1996); Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. No. 104-132, 110 Stat. 1214 (1996); REAL ID Act of 2005, Pub. L. No. 109-13, 119 Stat. 302 (2005); *see also* IRA J.

---

[8] In fact, the government may not need to provide any remedy at all.  *See Chappell v. Wallace*, 462 U.S. 296, 304, 103 S. Ct. 2362, 2367-68 (1983) (denying *Bivens* actions for enlisted military personnel against their superior officers); *United States v. Stanley*, 483 U.S. 669, 684, 107 S. Ct. 3054, 3064 (1987) (denying a *Bivens* remedy for injuries that arise out of or are in the course of activity incident to military service).

No. 13-50768
No. 14-10018

KURZBAN, KURZBAN'S IMMIGRATION LAW SOURCEBOOK 3-30 (14th ed.) (listing statutes).    In its most recent session, Congress considered numerous immigration bills.  *See e.g.*, Border Security, Economic Opportunity, and Immigration Modernization Act, H.R. 15, 113th Cong. (2014); Immigrant Detainee Legal Rights Act, H.R. 3914, 113th Cong. (2014).  Despite its repeated and careful attention to immigration matters, Congress has declined to authorize damage remedies against individual agents involved in civil immigration enforcement.    The institutional silence speaks volumes and counsels strongly against judicial usurpation of the legislative function.

In sum, Congress through the INA and its amendments has indicated "that the Court's power should not be exercised."  *Bush*, 462 U.S. at 378, 103 S. Ct. at 2411.  The INA's comprehensive regulation of all immigration related issues, combined with Congress's frequent amendments shows that the INA is "an elaborate remedial system that has been constructed step by step, with careful attention to conflicting policy considerations."  *Id* at 388, 103 S. Ct. at 2417.  Such a system "should [not] be augmented by the creation of a new judicial remedy."  *Id.*, 103 S. Ct. at 2417.  Although Frias and Garcia criticize the self-policing mechanisms within immigration law and procedures, our constitutionally mandated separation of powers requires this result.    The choice of remedies is "one better left to legislative judgment."  *Sosa*, 542 U.S. at 727, 124 S. Ct. at 2762.  Once the legislature has chosen a remedial scheme, federal courts are not free to supplement it.  Here, the implicit but emphatic message from Congress requires this court to abstain from subjecting immigration officers to *Bivens* liability for civil immigration detention and removal proceedings.

17

B.

Although we are convinced that the comprehensive regulations and remedies provided in civil immigration law and regulations preclude crafting an implied damage remedy here, "special factors" also counsel against extending *Bivens* liability to this new context. For this second prong of the determination whether to extend Bivens, a court "must make the kind of remedial determination that is appropriate for a common-law tribunal, paying particular heed, however, to any special factors counselling hesitation before authorizing a new kind of federal litigation." *Wilkie*, 551 U.S. at 550, 127 S. Ct. at 2598. The Second Circuit has observed that, "[t]he only relevant threshold— that a factor 'counsels hesitation'—is remarkably low." *Arar v. Ashcroft*, 585 F.3d at 574. The special factors unique to the immigration context far outweigh any benefits that might accrue from authorizing *Bivens* suits.

First, although the deterrent impact of personal damages exposure is difficult to assess, it appears that a *Bivens* remedy "is unlikely to provide significant, much less substantial, additional deterrence." *Lopez-Mendoza*, 468 U.S. at 1046, 104 S. Ct. at 3487 (internal citation and quotation marks omitted). As detailed above, the INA already prohibits border patrol agents from searching or arresting individuals without reasonable belief. *See* 8 U.S.C. § 1357(a)(2)-(5). DHS regulations prohibit stopping and questioning individuals without reasonable suspicion. 8 C.F.R. § 287.8(b)(2). The regulations further authorize arrests only if there is "reason to believe that the person to be arrested has committed an offense . . . or is an [illegal] alien." 8 C.F.R. § 287.8(c)(2)(i). DHS has established an expedited procedure for reviewing complaints of alleged violations. 8 C.F.R. § 287.10(a). Agency norms, therefore, are closely tailored to conform with constitutional standards. Additionally, the Supreme Court explained in *Lopez-Mendoza* that the

No. 13-50768
No. 14-10018

possibility of criminal prosecution for certain immigration crimes brings with it the exclusionary rule for illegally obtained evidence and already exerts some deterrent effect. 468 U.S. at 1042-43, 104 S. Ct. at 3485. To the extent, however, that most immigration enforcement results in civil removal proceedings in which removability is conceded, the occasional suit for damages may be a risk against which most officers can readily insure and is a deterrent only regarding the threat of employment repercussions for misconduct.

Nor would a *Bivens* remedy provide meaningful compensation to the victims, especially in cases like those before us. When the victims of an illegal stop and arrest are removable aliens, the damages available in a *Bivens* action would be minimal. Not only do Frias and Garcia not seek damages for detention in these cases, but such damages would not be available (absent unconstitutional physical abuse) precisely because they have no right not to be detained. *See Lopez-Mendoza*, 468 U.S. at 1048, 104 S. Ct. at 3488 ("The constable's blunder may allow the criminal to go free, but we have never suggested that it allows the criminal to continue in the commission of an ongoing crime."). They are no less removable just because the manner of their apprehensions violated the Fourth Amendment. *See id.* (noting that illegal aliens are "person[s] whose unregistered presence in this country, without more, constitutes a crime"). In many removal cases, the government does not need any evidence collected at the time of arrest to prove that a person is removable. *See id.* at 1043, 104 S. Ct. at 3487 (explaining that in removal proceedings the government need only prove alienage "that will sometimes be possible using evidence gathered independently of, or sufficiently attenuated from, the original arrest"). Thus, it is hard to see what compensation—if any— Frias and Garcia would be entitled to under the facts of this case. In any event, as has been noted above, the aliens' ultimate remedies lie in pursuing

19

termination of removal proceedings through the INA's many available avenues. In certain cases, the exclusion of exculpatory evidence might be sought if there is an "egregious violation[] of [the] Fourth Amendment or other liberties that might . . . undermine the probative value of the evidence obtained." *Id.* at 1050, 104 S. Ct. at 3489.

These speculative benefits come at significant costs. *Bivens* liability could deter agents from vigorous enforcement and investigation of illegal immigration. Faced with a threat to his checkbook from suits based on evolving and uncertain law, the officer may too readily shirk his duty. Just as troubling, *Bivens* liability would likely preclude many of the mass arrests that are critical to immigration enforcement in workplaces and safe houses. Immigration arrests often "occur in crowded and confused circumstances." *Lopez-Mendoza*, 468 U.S. at 1049, 104 S. Ct. at 3489. Thwarting *Bivens* suits would require agents to produce "a precise account of exactly what happened in each particular arrest." *Id.* at 1049-50, 104 S. Ct. at 3489. Because of the chaos surrounding such enforcement actions and multiple simultaneous arrests, producing a detailed account of each arrest is impossible. In unusual but not unforeseeable cases, *Bivens* suits concerning immigration enforcement may disclose more than "normal domestic law-enforcement priorities and techniques" and might involve "the disclosure of foreign-policy objectives and . . . foreign-policy products." *Mirmehdi,* 689 F.3d at 983 (internal citations and quotation marks omitted).

Another "special factor" counselling hesitation is that immigration policy and enforcement implicate serious separation of powers concerns. The Constitution gives Congress the power to "establish a uniform Rule of Naturalization." U.S. Const., art. I, § 8, cl. 4. This, combined with the Executive Branch's "inherent power as sovereign to control and conduct

relations with foreign nations" gives the political branches of the federal government "broad, undoubted power over the subject of immigration." *Arizona*, 132 S. Ct. at 2498. Particularly in the immigration context, a judicially created *Bivens* remedy is superimposed on the other branches' constitutional authority. Lack of institutional competence as well as a lack of constitutional authority counsel or demand hesitation by the judiciary in fostering litigation of this sort.

Finally, extending *Bivens* suits to the immigration context could yield a tidal wave of litigation. There are over 11 million illegal aliens in the United States. MICHAEL HOEFER, NANCY RYTINA, AND BRYAN BAKER, DEP'T OF HOMELAND SEC., ESTIMATES OF THE UNAUTHORIZED IMMIGRATION POPULATIONS RESIDING IN THE UNITED STATES 1, JANUARY 2011 (2012). In 2013, the federal government apprehended 662,483 illegal aliens. JOHN F. SIMANSKI, DEP'T OF HOMELAND SEC., ANNUAL REPORT IMMIGRATION ENFORCEMENT ACTIONS: 2013 3 (2014). CBP accounted for 420,789 or 64 percent of those apprehensions. *Id.* at 4. Over eighty percent of those apprehensions occurred along the southwest border. *Id.* The Supreme Court has noted that "the deportation process ordinarily begins with a warrantless arrest." *Reno v. Flores*, 507 U.S. 292, 307, 113 S. Ct. 1439, 1449-50 (1993). It is an easy exercise for aliens, even without an attorney, to file suit alleging, as in these cases, that there was no reasonable suspicion for their stops, arrests or detentions. Extending *Bivens* actions to millions of illegal aliens could cripple immigration enforcement with the distraction, cost, and delay of lawsuits, even as it exposed enforcement officers to personal liability simply for doing their job.

In the final tally, the costs of judicially creating a new *Bivens* remedy significantly outweigh any largely conjectural benefits. On the second prong

No. 13-50768
No. 14-10018

of the *Bivens* analysis, this is not a hard case. Were we a common law court empowered to craft a remedy for the alleged illegal traffic stops and arrests here (which we are not as a result of the analysis on the first *Bivens* prong), we would desist for all the reasons recited above.

## CONCLUSION

Based on our conclusion that these plaintiffs cannot pursue *Bivens* suits against the agents for allegedly illegal conduct during investigation, detention, and removal proceedings, we **REVERSE** and **REMAND** for further proceedings consistent with this opinion.

22