# United States Court of Appeals
## for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**
September 2, 2020

Lyle W. Cayce
Clerk

No. 19-50795

Jose L. Oliva,

*Plaintiff—Appellee*,

*versus*

Mario J. Nivar; Hector Barahona; Mario Garcia,

*Defendants—Appellants*.

Appeal from the United States District Court
for the Western District of Texas
USDC No. 3:18-CV-15

Before Smith, Ho, and Oldham, *Circuit Judges*.
Andrew S. Oldham, *Circuit Judge*:

The question presented is whether to extend *Bivens* to a new context. The district court said yes. We say no. So we reverse and remand with instructions to dismiss the claims against the federal officers.

I.

On February 16, 2016, Jose Oliva attempted to enter a Veterans Affairs ("VA") hospital in El Paso, Texas. The entrance to the hospital was

 protected by VA police and metal detectors. While Oliva stood in line for the metal detector, he spoke with one of the officers. Somehow that conversation escalated into a physical altercation. That ended when VA police wrestled Oliva to the ground in a chokehold and arrested him. Oliva exhausted his administrative remedies and then sued the federal officers for damages under *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971). He also brought claims against the United States under the Federal Tort Claims Act ("FTCA").

Oliva offered an affidavit with his version of the facts. Oliva stated: "Upon entry into the [hospital], I emptied my pockets and placed all items into an inspection bin as required." VA Officer Nivar asked for identification, and Oliva "calmly explained . . . that it was in the inspection bin with [his] other personal items." Oliva says he complied with all instructions from the VA police. Then, when Oliva tried to walk through the metal detector, three VA police officers (Nivar, Barahona, and Garcia) attacked him without provocation.

The VA police officers offered a very different version of the facts. Officers Nivar, Barahona, and Garcia submitted materially identical affidavits. They stated that Oliva "attempted to enter the [hospital] without first clearing security." The officers further averred that Oliva did not clear security because he failed to show identification.

Security cameras captured the altercation on video, so we consider "the facts in the light depicted by the videotape." *Scott v. Harris*, 550 U.S. 372, 381 (2007). The video is inconsistent with Oliva's account of the facts in certain respects. For example, the video shows that Oliva did not place "all" of his items in the inspection bin. He's plainly holding something in his hand when he attempts to walk through the metal detector. Moreover, Officer Nivar approaches Oliva with a pair of handcuffs before Oliva attempts

to walk through the metal detector. Thus, the video undermines (if not contradicts) Oliva's statement that "[a]t no point before I was attacked, was I told that I was going to be arrested or detained."

After the altercation, Oliva sought medical treatment. Oliva had two shoulder surgeries, and he also sought treatment for post-traumatic stress disorder due to nightmares and anxiety stemming from this event. Relying on *Bivens* for his cause of action against the officers, Oliva sought money damages for violations of, *inter alia*, the Fourth Amendment.[1]

With respect to the Fourth Amendment claim, the district court held that "this case does not present a new *Bivens* context." In the district court's view, this case is just like *Bivens* because both cases involved excessive-force, unreasonable-seizure claims. Therefore, the district court held that Oliva has the right to recover damages under *Bivens* if his claims are not barred by qualified immunity. At summary judgment, the district court agreed with Oliva that his claims against the officers are not so barred. The officers timely appealed.

Our review is *de novo*. *See Garcia de la Paz v. Coy*, 786 F.3d 367, 371 (5th Cir. 2015). Our "jurisdiction over qualified immunity appeals extends to elements of the asserted cause of action that are directly implicated by the defense of qualified immunity, including whether to recognize new *Bivens* claims." *Ibid.* (quotation omitted).

## II.

In cases like this one, the Supreme Court has said "the *Bivens* question" is "antecedent" to questions of qualified immunity. *Hernandez v.*

---

[1] Oliva also claimed that the officers violated his rights under the Fifth Amendment. The district court dismissed that claim at the motion-to-dismiss stage. Nivar did not appeal it.

*Mesa*, 137 S. Ct. 2003, 2006 (2017). Courts confronting *Bivens* claims generally "must ask two questions. First, do [the plaintiff's] claims fall into one of the three existing *Bivens* actions? Second, if not, should we recognize a new *Bivens* action here?" *Cantú v. Moody*, 933 F.3d 414, 422 (5th Cir. 2019). We say no and no.

## A.

*Bivens* was the product of an "*ancien regime*" that freely implied rights of action. *Ziglar v. Abbasi*, 137 S. Ct. 1843, 1855 (2017) (quoting *Alexander v. Sandoval*, 532 U.S. 275, 287 (2001)). That regime ended long ago. *Id.* at 1855–56; *see also Sandoval*, 532 U.S. at 287 ("Raising up causes of action where a statute has not created them may be a proper function for common-law courts, but not for federal tribunals." (quotation omitted)). Today, *Bivens* claims generally are limited to the circumstances of the Supreme Court's trilogy of cases in this area: (1) manacling the plaintiff in front of his family in his home and strip-searching him in violation of the Fourth Amendment, *see Bivens*, 403 U.S. at 389–90; (2) discrimination on the basis of sex by a congressman against a staff person in violation of the Fifth Amendment, *see Davis v. Passman*, 442 U.S. 228 (1979); and (3) failure to provide medical attention to an asthmatic prisoner in federal custody in violation of the Eighth Amendment, *see Carlson v. Green*, 446 U.S. 14 (1980).

Virtually everything else is a "new context." *See Abbasi*, 137 S. Ct. at 1865 (explaining that "the new-context inquiry is easily satisfied"). As the Supreme Court has emphasized, our "understanding of a 'new context' is broad." *Hernandez v. Mesa*, 140 S. Ct. 735, 743 (2020). That's because "even a modest extension" of the *Bivens* trilogy "is still an extension." *Abbasi*, 137 S. Ct. at 1864. And to put it mildly, extending *Bivens* to new contexts is a "disfavored judicial activity." *Id.* at 1857 (quotation omitted).

The district court contravened these limitations. It said, "[l]ike *Bivens*, this case involves allegations that Defendants . . . violated [Oliva's] Fourth Amendment right to be free of excessive force." That's true but irrelevant. "Courts do not define a *Bivens* cause of action at the level of 'the Fourth Amendment' or even at the level of 'the unreasonable-searches-and-seizures clause.'" *Cantú*, 933 F.3d at 422. Indeed, it is not enough even if "a plaintiff asserts a violation of the same clause of the same amendment *in the same way*." *Ibid.*

Instead, the question is whether this "case is different in a meaningful way from previous *Bivens* cases decided by [the Supreme] Court." *Abbasi*, 137 S. Ct. at 1859. If so, "then the context is new." *Ibid.* As the Supreme Court has explained:

> Without endeavoring to create an exhaustive list of differences that are meaningful enough to make a given context a new one, some examples might prove instructive. A case might differ in a meaningful way because of the rank of the officers involved; the constitutional right at issue; the generality or specificity of the official action; the extent of judicial guidance as to how an officer should respond to the problem or emergency to be confronted; the statutory or other legal mandate under which the officer was operating; the risk of disruptive intrusion by the Judiciary into the functioning of other branches; or the presence of potential special factors that previous *Bivens* cases did not consider.

*Id.* at 1859–60.

This case differs from *Bivens* in several meaningful ways. This case arose in a government hospital, not a private home. *Cf. Bivens*, 403 U.S. at 389. The VA officers were manning a metal detector, not making a warrantless search for narcotics. *Cf. ibid.* Judicial guidance varies across these contexts. *See Cantú*, 933 F.3d at 423 ("'Judicial guidance' differs across the

various kinds of Fourth Amendment violations—like seizures by deadly force, searches by wiretap, *Terry* stops, executions of warrants, seizures without legal process ('false arrest'), seizures with wrongful legal process ('malicious prosecution'), etc."). The dispute that gave rise to Oliva's altercation involved the hospital's ID policy, not a narcotics investigation. *Cf. Bivens*, 403 U.S. at 389. The cases thus involve different legal mandates. *Cf. Loumiet v. United States*, 948 F.3d 376, 382 (D.C. Cir. 2020) (Katsas, J.) (contrasting enforcement of federal banking laws with enforcement of federal narcotics laws in new-context analysis). The VA officers did not manacle Oliva in front of his family or strip-search him. *Cf. Bivens*, 403 U.S. at 389. Contrariwise the narcotics officers did not place Webster Bivens in a chokehold. *See ibid.* In short, Oliva's "claim involves different conduct by different officers from a different agency." *Cantú*, 933 F.3d at 423. We could go on, but the point should be clear: the context is new.

## B.

That leads to the second question: whether to engage in the "disfavored judicial activity" of recognizing a new *Bivens* action. *Abbasi*, 137 S. Ct. at 1857 (quotation omitted). For decades, the Supreme Court has "consistently refused to extend *Bivens* liability to any new context or new category of defendants." *Corr. Servs. Corp. v. Malesko*, 534 U.S. 61, 68 (2001). And it recently reminded us, "for almost 40 years, we have consistently rebuffed requests to add to the claims allowed under *Bivens*." *Hernandez*, 140 S. Ct. at 743.

The Court's reluctance to extend *Bivens* respects the separation of powers. "When evaluating whether to extend *Bivens*, the most important question 'is "who should decide" whether to provide for a damages remedy, Congress or the courts?'" *Id.* at 750 (quoting *Abbasi*, 137 S. Ct. at 1857). The answer to that question is usually Congress. *Ibid.* So if any "special factors"

give us "reason to pause before applying *Bivens* in a new context or to a new class of defendants," then we should not extend *Bivens*. *Id.* at 743; *see also Canada v. United States*, 950 F.3d 299, 309 (5th Cir. 2020) ("If any special factors do exist, then courts *must refrain* from creating an implied cause of action in that case." (quotation omitted)).

In this case, special factors counsel against extending *Bivens*.[2] First, Congress has designed an alternative remedial structure. As the *Abbasi* Court observed, "if there is an alternative remedial structure present in a certain case, that alone may limit the power of the Judiciary to infer a new *Bivens* cause of action." 137 S. Ct. at 1858. Likewise, we have emphasized that "the existence of a statutory scheme for torts committed by federal officers" weighs against inferring a new cause of action. *Cantú*, 933 F.3d at 423. Although an alternative form of relief is not a necessary special factor, it may be a sufficient one. *See Abbasi*, 137 S. Ct. at 1858. "And when alternative methods of relief are available, a *Bivens* remedy usually is not." *Id.* at 1863.

Consider the scheme Congress created here. A person in Oliva's situation first proceeds through the VA's administrative process. *See* 28 U.S.C. § 2675 (conditioning availability of an action for money damages against the United States on administrative exhaustion of the claim). Then

---

[2] Oliva asserts that the officers forfeited the "special factors" issue by not raising it in their motion for summary judgement. Not so. Because *Bivens* is a judicially crafted remedy, a court asked to extend *Bivens* has a concomitant responsibility to "ask whether there are any special factors that counsel hesitation about granting the extension." *Hernandez*, 140 S. Ct. at 743 (quotation omitted). Moreover, the district court discussed "special factors" arguments at length in its order denying Nivar's motion to dismiss. And Oliva has briefed the issue here. So both the district court and Oliva had ample opportunity to address the issue.

he can bring his claims under the FTCA. *See id.* § 2680(h); *Cantú*, 933 F.3d at 423.

Oliva followed that process. He started by filing an administrative complaint with the VA, which the VA denied on July 20, 2017. He then sued the United States under the FTCA, in addition to suing the individual VA officers under *Bivens*. Oliva's own conduct shows there is an alternative remedial scheme for his claims.

Oliva cannot negate this special factor by arguing that the FTCA doesn't cover excessive-force claims. The Supreme Court has been clear that the alternative relief necessary to limit *Bivens* need not provide the exact same kind of relief *Bivens* would. *See, e.g.*, *Minneci v. Pollard*, 565 U.S. 118, 129 (2012) ("State-law [tort] remedies and a potential *Bivens* remedy need not be perfectly congruent."). That the FTCA might not give Oliva everything he seeks is therefore no reason to extend *Bivens*. *See Hernandez*, 140 S. Ct. at 750 ("Congress's decision not to provide a judicial remedy does not compel us to step into its shoes."); *cf. Sandoval*, 532 U.S. at 286–87 (explaining that if "a cause of action does not exist," then "courts may not create one, no matter how desirable that might be as a policy matter").

Second, the separation of powers is itself a special factor. *See Abbasi*, 137 S. Ct. at 1862. That is, we must consider what Congress has done and what Congress has left undone. With the FTCA, Congress waived the United States' sovereign immunity as to some claims and not others. *See Dolan v. U.S. Postal Serv.*, 546 U.S. 481, 484–85 (2006). Indeed, "[t]he FTCA waives the United States' sovereign immunity for certain intentional torts committed by law enforcement officers." *Millbrook v. United States*, 569 U.S. 50, 54 (2013). Yet Congress did not make individual officers statutorily liable for excessive-force claims. This "silence of Congress is relevant" to the special-factors inquiry. *Abbasi*, 137 S. Ct. at 1862.

No. 19-50795

These special factors give us "reason to pause" before extending *Bivens*. *Hernandez*, 140 S. Ct. at 743. In such cases, the Supreme Court has consistently "reject[ed] the request" to extend *Bivens*. *Ibid.* We do the same.

\*     \*     \*

We REVERSE and REMAND with instructions to dismiss the claims against the federal officers.