# United States Court of Appeals for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**
March 9, 2021

Lyle W. Cayce
Clerk

No. 20-20217

Kevin Byrd,

*Plaintiff—Appellee*,

*versus*

Ray Lamb, *Agent*,

*Defendant—Appellant*.

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 4:19-CV-3014

Before King, Elrod, and Willett, *Circuit Judges*.

Per Curiam:

Kevin Byrd alleges that Ray Lamb, an Agent for the Department of Homeland Security, verbally and physically threatened him with a gun to facilitate an unlawful seizure. Byrd filed a *Bivens* action against Agent Lamb alleging use of excessive force to effectuate an unlawful seizure. Agent Lamb filed a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). The district court denied Agent Lamb's motion to dismiss. Agent Lamb now appeals. We conclude that Byrd's lawsuit is precluded by our binding case law in *Oliva v. Nivar*, 973 F.3d 438 (5th Cir. 2020), *petition for cert. filed*, 89 U.S.L.W. 28 (U.S. Jan. 29, 2021) (No. 20-1060). We therefore

No. 20-20217

REVERSE and REMAND with instructions to dismiss the claims against Agent Ray Lamb.

I.

In the early morning hours of February 2, 2019, Kevin Byrd went to visit his ex-girlfriend, Darcy Wade, at the hospital after she called to tell him that she had been in a car accident. Byrd learned that Wade had been in the car with Eric Lamb (Darcy's then-boyfriend) when they collided with a Greyhound bus. Byrd also became aware that Wade and Eric Lamb had been kicked out of a bar before the car accident occurred. Byrd went to that bar to learn more details about this occurrence. After attempting to investigate, Byrd tried to leave the parking lot of the bar, but he was prevented by Eric's father, Agent Ray Lamb.

Byrd alleges that Agent Lamb physically threatened him with a gun, and verbally threatened to "put a bullet through his f—king skull" and that "he would blow his head off." Byrd further alleges that Agent Lamb attempted to smash the window of his car and left marks and scratches on his window.

Shortly after the incident began, Byrd called for police assistance. Two local officers arrived at the scene. Byrd contends that upon the officers' arrival, Agent Lamb identified himself as a federal agent for the Department of Homeland Security, and one of the officers immediately handcuffed and detained Byrd for nearly four hours.

After reviewing surveillance footage, the officers released Byrd. Shortly thereafter, Agent Lamb was arrested and taken into custody for aggravated assault with a deadly weapon and misdemeanor criminal mischief.

Byrd filed a *Bivens* action against Agent Lamb alleging use of excessive force to effectuate an unlawful seizure and filed a 42 U.S.C. § 1983 action

No. 20-20217

against the two local officers for unlawfully detaining him. Agent Lamb and the local officers filed motions to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) raising the defense of qualified immunity. Agent Lamb also argued that he had reasonable suspicion of Byrd's criminal activity, including harassment and stalking of Lamb's son. The district court granted the officers' motions to dismiss but denied Agent Lamb's motion to dismiss.

Agent Lamb timely appealed.

## II.

"We review the district court's denial of the qualified immunity defense *de novo*, accepting all well-pleaded facts as true and viewing them in the light most favorable to the plaintiff." *Brown v. Miller*, 519 F.3d 231, 236 (5th Cir. 2008). "Our jurisdiction over qualified immunity appeals extends to 'elements of the asserted cause of action' that are 'directly implicated by the defense of qualified immunity[,]' including whether to recognize new *Bivens* claims." *De La Paz v. Coy*, 786 F.3d 367, 371 (5th Cir. 2015) (quoting *Wilkie v. Robbins*, 551 U.S. 537, 549 n.4 (2007)).

The Supreme Court has stated that "the *Bivens* question" is "antecedent" to the question of qualified immunity. *Hernandez v. Mesa* (*Hernandez I*), 137 S. Ct. 2003, 2006 (2017). In *Bivens*, the Supreme Court recognized an implied right of action for damages against federal officers alleged to have violated a citizen's constitutional rights. *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388, 397 (1971).

The Supreme Court has cautioned against extending *Bivens* to new contexts. *See Hernandez v. Mesa* (*Hernandez II*), 140 S. Ct. 735, 744 (2020) (holding that the plaintiff's *Bivens* claim arose in a new context, and factors, including the potential effect on foreign relations, counseled hesitation with respect to extending *Bivens*); *Ziglar v. Abbasi*, 137 S. Ct. 1843, 1861 (2017) (holding that plaintiff's detention-policy claims arose in a new *Bivens*

context, and factors, such as interfering with sensitive Executive-Branch functions and inquiring into national-security issues, counseled against extending *Bivens*).  In fact, the Supreme Court has gone so far as to say that extending *Bivens* to new contexts is a "'disfavored' judicial activity." *Abbasi*, 137 S. Ct. at 1857 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 675 (2009)).

The Supreme Court has provided a two-part test to determine when extension would be appropriate.  First, courts should consider whether the case before it presents a "new context." *Hernandez II*, 140 S. Ct. at 743.  Only where a claim arises in a new context should courts then proceed to the second step of the inquiry, and contemplate whether there are "any special factors that counsel hesitation about granting the extension." *Id.* (cleaned up).  Some recognized special factors to consider include: whether there is a "risk of interfering with the authority of the other branches," whether "there are sound reasons to think Congress might doubt the efficacy or necessity of a damages remedy," and "whether the Judiciary is well suited, absent congressional action or instruction, to consider and weigh the costs and benefits of allowing a damages action to proceed." *Id.*  "When a party seeks to assert an implied cause of action under the Constitution," as in this case, "separation-of-powers principles . . . should be central to the analysis." *Abbasi*, 137 S. Ct. at 1857.

We recently addressed the extension of *Bivens* in *Oliva v. Nivar*, 973 F.3d 438.  In that case, an altercation arose between police officers in a Veterans Affairs (VA) hospital and Oliva over hospital ID policy. *Id.* at 440.  The VA officer wrestled Oliva to the ground in a chokehold and arrested him. *Id.*  We concluded that Oliva's Fourth Amendment claim for use of excessive force arose in a new context. *Id.* at 443.

In ruling in this case, the conscientious district court judge did not have the benefit of our decision in *Oliva* and Agent Lamb's attorney did not

even raise the *Bivens* issue in the district court. Nevertheless, we must address it here. In *Oliva*, we held that *Bivens* claims are limited to three situations. First, "manacling the plaintiff in front of his family in his home and strip-searching him in violation of the Fourth Amendment." *Id.* at 442 (citing *Bivens*, 403 U.S. at 389–90). Second, "discrimination on the basis of sex by a congressman against a staff person in violation of the Fifth Amendment." *Id.* (citing *Davis v. Passman*, 442 U.S. 228 (1979)). Third, "failure to provide medical attention to an asthmatic prisoner in federal custody in violation of the Eighth Amendment." *Id.* (citing *Carlson v. Green*, 446 U.S. 14 (1980)). "Virtually everything else is a 'new context.'" *Id.* (quoting *Abbasi*, 137 S. Ct. at 1865).

To determine whether Byrd's case presents a new context, we must determine whether his case falls squarely into one of the established *Bivens* categories, or if it is "different in a meaningful way from previous *Bivens* cases decided by [the Supreme] Court." *Id.* at 442 (quoting *Abbasi*, 137 S. Ct. at 1859).

Here, although Byrd alleges violations of the Fourth Amendment, as did the plaintiff in *Bivens*, Byrd's lawsuit differs from *Bivens* in several meaningful ways. This case arose in a parking lot, not a private home as was the case in *Bivens*. 403 U.S. at 389. Agent Lamb prevented Byrd from leaving the parking lot; he was not making a warrantless search for narcotics in Byrd's home, as was the case in *Bivens*. *Id.* The incident between the two parties involved Agent Lamb's suspicion of Byrd harassing and stalking his son, not a narcotics investigation as was the case in *Bivens*. *Id.* Agent Lamb did not manacle Byrd in front of his family, nor strip-search him, as was the case in *Bivens*. *Id.* Nor did Lamb discriminate based on sex like in *Davis*, 442 U.S. at 230. Nor did he fail to provide medical attention like in *Carlson*, 446 U.S. at 23–24. As explained in *Oliva*, Byrd's case presents a new context.

We must also determine whether any special factors counsel against

No. 20-20217

extending *Bivens*. Here, as in *Oliva*, separation of powers counsels against extending *Bivens*. *Oliva*, 973 F.3d at 444. Congress did not make individual officers statutorily liable for excessive-force or unlawful-detention claims, and the "silence of Congress is relevant." *Abbasi*, 137 S. Ct. at 1862. This special factor gives us "reason to pause" before extending *Bivens*. *Hernandez II*, 140 S. Ct. at 743.

For these reasons, we reject Byrd's request to extend *Bivens*. Because we do not extend *Bivens* to Byrd's lawsuit, we need not address whether Agent Lamb is entitled to qualified immunity.

## III.

We REVERSE and REMAND with instructions to dismiss the claims against federal Agent Ray Lamb.

No. 20-20217

DON R. WILLETT, *Circuit Judge*, specially concurring:

The majority opinion correctly denies *Bivens* relief.

Middle-management circuit judges must salute smartly and follow precedent. And today's result is precedentially inescapable: Private citizens who are brutalized—even killed—by rogue federal officers can find little solace in *Bivens*.

Between 1971 and 1980, the Supreme Court recognized a *Bivens* claim in three different cases, involving three different constitutional violations under the Fourth, Fifth, and Eighth Amendments.[1] Those nine years represent the entire lifespan of *Bivens*. For four decades now, the Supreme Court, while stopping short of overruling *Bivens*, has "cabined the doctrine's scope, undermined its foundation, and limited its precedential value."[2] Since 1980, the Supreme Court has "consistently rebuffed" pleas to extend *Bivens*, even going so far as to suggest that the Court's *Bivens* trilogy was wrongly decided.[3] The *Bivens* doctrine, if not overruled, has certainly been overtaken.

Our recent decision in *Oliva v. Nivar* erases any doubt.[4] José Oliva was a 70-year-old Vietnam veteran who was choked and assaulted by federal police in an unprovoked attack at a VA hospital. The *Oliva* panel isolated the precise facts of the three Supreme Court cases that recognized *Bivens*

---

[1] *See Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388, 389–90 (1971) (strip search in violation of the Fourth Amendment); *Davis v. Passman*, 442 U.S. 228 (1979) (discrimination on the basis of sex in violation of the Fifth Amendment); *Carlson v. Green*, 446 U.S. 14 (1980) (failure to provide medical attention to a prisoner in violation of the Eighth Amendment).

[2] *Hernandez v. Mesa*, 140 S. Ct. 735, 751 (2020) (Thomas, J., concurring).

[3] *Id.* at 743.

[4] 973 F.3d 438 (5th Cir. 2020).

liability,[5] quoted the Court's recent admonition that extending *Bivens* was "disfavored judicial activity,"[6] and concluded that Oliva had no constitutional remedy. "Virtually everything" beyond the specific facts of the *Bivens* trilogy "is a 'new context,'" the panel held.[7] And new context = no *Bivens* claim.

My big-picture concern as a federal judge—indeed, as an everyday citizen—is this: If *Bivens* is off the table, whether formally or functionally, and if the Westfall Act preempts all previously available state-law constitutional tort claims against federal officers acting within the scope of their employment,[8] do victims of unconstitutional conduct have any judicial forum whatsoever? Are all courthouse doors—both state and federal—slammed shut? If so, and leaving aside the serious constitutional concerns that would raise, does such wholesale immunity induce impunity, giving the federal government a pass to commit one-off constitutional violations?

Chief Justice John Marshall warned in 1803 that when the law no longer furnishes a "remedy for the violation of a vested legal right," the United States "cease[s] to deserve th[e] high appellation" of being called "a

---

[5] *Id.* at 442.

[6] *Id.* (quoting *Ziglar v. Abbasi*, 137 S. Ct. 1843, 1857 (2017)).

[7] 973 F.3d at 442.

[8] 8 U.S.C. § 2679(b). The Federal Tort Claims Act does waive the United States' sovereign immunity for certain intentional torts—but not for excessive-force claims against individual federal officers. For victims like José Oliva, Congress offers no protection at all; indeed, it has removed protection. *Hernandez*, 140 S. Ct. at 752 (Thomas, J., concurring). Beyond providing no federal-officer corollary to § 1983, Congress "has pre-empted the state tort suits that traditionally served as the mechanism by which damages were recovered from federal officers." *Id.* (citing the Westfall Act, 8 U.S.C. § 2679(b)). For Oliva, as for many victims of unconstitutional conduct at the hands of federal officers, it's *Bivens* or nothing.

government of laws, and not of men."[9] Fast forward two centuries, and redress for a federal officer's unconstitutional acts is either extremely limited or wholly nonexistent, allowing federal officials to operate in something resembling a Constitution-free zone. *Bivens* today is essentially a relic, technically on the books but practically a dead letter, meaning this: If you wear a federal badge, you can inflict excessive force on someone with little fear of liability.

At bottom, *Bivens* poses the age-old structural question of American government: who decides—the judiciary, by creating implied damages actions for constitutional torts, or Congress, by reclaiming its lawmaking prerogative to codify a *Bivens*-type remedy (or by nixing the preemption of state-law tort suits against federal officers)? Justices Thomas and Gorsuch have called for *Bivens* to be overruled, contending it lacks any historical basis.[10] Some constitutional scholars counter that judge-made tort remedies against lawless federal officers date back to the Founding.[11] Putting that debate aside, Congress certainly knows how to provide a damages action for

---

[9] *Marbury v. Madison*, 5 U.S. 137, 163 (1803).

[10] *Hernandez*, 140 S. Ct. at 750–53 (Thomas, J., concurring, joined by Gorsuch, J.).

[11] *See* James E. Pfander & David Baltmanis, *Rethinking* Bivens: *Legitimacy and Constitutional Adjudication*, 98 Georgetown L. J. 117, 134 (2009); *see also* Carlos M. Vazquez & Steven I. Vladeck, *State Law, the Westfall Act, and the Nature of the* Bivens *Question*, 161 U. Pa. L. Rev. 509, 532 (2013); Sina Kian, *The Path of the Constitution: The Original System of Remedies, How it Changed, and How the Court Responded*, 87 N.Y.U. L. Rev. 132,144 (2012); Peter Margulies, *Curbing Remedies for Official Wrongs: The Need for* Bivens *Suits in National Security Cases*, 68 Case W. Res. L. Rev. 1153, 1156–64 (2018); Steven I. Vladeck, *Supreme Court Review*, Cato Institute, https://www.cato.org/sites/cato.org/files/2020-09/2020-supreme-court-review-10_vladeck.pdf; James E. Pfander, Alexander A. Reinert, Joanna C. Schwartz, *The Myth of Personal Liability: Who Pays When* Bivens *Claims Succeed*, 72 Stan. L. Rev. 561, 569 (2020); Brief Amicus Curiae of Douglas Laycock, James E. Pfander, Alexander A. Reinert and Joanna C. Schwartz, *Hernandez v. Mesa*, 140 S. Ct. 735 (2020).

No. 20-20217

unconstitutional conduct. Wrongs inflicted by state officers are covered by § 1983. But wrongs inflicted by federal officers are not similarly righted, leaving constitutional interests violated but not vindicated. And it certainly smacks of self-dealing when Congress subjects state and local officials to money damages for violating the Constitution but gives a pass to rogue federal officials who do the same. Such imbalance—denying federal remedies while preempting nonfederal remedies—seems innately unjust.

I am certainly not the first to express unease that individuals whose constitutional rights are violated at the hands of federal officers are essentially remedy-less.[12] A written constitution is mere meringue when rights can be violated with nonchalance. I add my voice to those lamenting today's rights-without-remedies regime, hoping (against hope) that as the chorus grows louder, change comes sooner.

---

[12] *See Marbury*, 5 U.S. at 163 (noting the "general and indisputable rule, that where there is a legal right, there is also a legal remedy") (quoting 3 WILLIAM BLACKSTONE, COMMENTARIES, 23); *see also* Joan Steinman, *Backing Off* Bivens *and the Ramifications of This Retreat for the Vindication of First Amendment Rights*, 83 MICH. L. REV. 269 (1984); Betsy J. Grey, *Preemption of* Bivens *Claims: How Clearly Must Congress Speak?*, 70 WASH. U. L.Q. 1087, 1127 (1992); Joanna C. Schwartz, Alexander A. Reinert, and James E. Pfander, *Going Rogue: The Supreme Court's Newfound Hostility to Policy-Based* Bivens *Claims*, NOTRE DAME L. REV., Forthcoming 2021, https://ssrn.com/abstract=3778230; William Baude, Bivens *Liability and its Alternatives*, https://www.summarycommajudgment.com/blog/a-few-thoughts-about-bivens-liability.