# United States Court of Appeals
# For the Second Circuit

August Term 2022
Argued: June 13, 2023
Decided: July 12, 2024

No. 22-654

CLINT EDWARDS,

*Plaintiff-Appellant*,

*v.*

DREW GIZZI, ROBERT JOHNSEN, FRANK PENA,
JOHN DOES 1-10, WALTER COOK,
ANTHONY MERCURIO,

*Defendants-Appellees*.[*]

Appeal from the United States District Court
for the Southern District of New York
No. 20-cv-7371, Karas, *Judge*.

---

[*] The Clerk of Court is directed to amend the caption accordingly.

Before:      PARKER, PARK, and ROBINSON, *Circuit Judges.*

Appellant Clint Edwards brought claims seeking damages from court-security officers and deputy U.S. Marshals for using excessive force while restraining him in a courtroom. The district court dismissed his claims, concluding that Edwards has no cause of action under *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971). The judgment of the district court is **AFFIRMED.**

Judge Park concurs in the judgment in a separate opinion.

Judge Robinson concurs in the judgment in a separate opinion.

Judge Parker dissents in a separate opinion.

———

ATHUL K. ACHARYA, Public Accountability, Portland, OR, *for Plaintiff-Appellant.*

LUCAS ISSACHAROFF, Assistant United States Attorney (Christopher Connolly, Assistant United States Attorney, *on the brief*), *for* Damian Williams, United States Attorney for the Southern District of New York, New York, NY, *for Defendants-Appellees Drew Gizzi and Robert Johnsen.*

———

PER CURIAM:

Appellant Clint Edwards brought claims seeking damages from court-security officers and deputy U.S. Marshals for using

2

excessive force while restraining him in a courtroom. The district court dismissed his claims, concluding that Edwards has no cause of action under *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971). The judgment of the district court is affirmed.

PARK, *Circuit Judge*, concurring in the judgment:

This case involves a straightforward application of a line of Supreme Court precedent unbroken over forty years. The district court correctly concluded that Edwards has no cause of action under *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971). That is because the context here—an Eighth Amendment claim for excessive force against officers in the United States Marshals Service and court-security personnel—"is different in a meaningful way" from the three *Bivens* claims the Supreme Court has recognized. *Ziglar v. Abbasi*, 582 U.S. 120, 139 (2017). Moreover, Congress has provided in the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 1346(b), 2671-2680, just the sort of alternative remedial scheme that counsels against judicial expansion of *Bivens*. We should follow Supreme Court precedent and avoid engaging in legislative functions.

## I. BACKGROUND

In July 2018, Edwards pleaded guilty to coercion and enticement of a minor to engage in illegal sexual activity in violation of 18 U.S.C. § 2422(b). During his sentencing, he began yelling at the judge and the Assistant United States Attorney ("AUSA"). Edwards took an aggressive stance, raising his hands and slightly cocking his arms back, and lunged towards the AUSA's desk. A Deputy United States Marshal, a District Security Officer, a private prison guard, and three Court Security Officers restrained him, and broke his arm in the process. Edwards filed a *Bivens* suit against them all.

Three defendants moved to dismiss Edwards's complaint. The district court construed the complaint as alleging two *Bivens* claims—one for excessive force under the Fifth or Eighth Amendment and one for deliberate indifference under the Eighth Amendment. The district court granted the motion to dismiss. *Edwards v. Gizzi*, No. 20-CV-7371 (KMK), 2022 WL 309393, at *2, *10 (S.D.N.Y. Feb. 2, 2022). It concluded that both claims presented new *Bivens* contexts and that the existence of a statutory remedial scheme under the FTCA presented a special factor counseling hesitation before extending the *Bivens* implied-damages remedy. *Id.* at *5-10. The court gave Edwards thirty days to explain why his claims against the remaining defendants should not be dismissed. *Id.* at *10.

Instead, Edwards asked the district court to convert the partial dismissal into an appealable final judgment. The court did so, and Edwards appealed.

## II.  DISCUSSION

Edwards argues that his Eighth Amendment excessive-force claim does not implicate a new *Bivens* context and that no special factors counsel hesitation in extending a remedy.

We review the grant of a motion to dismiss de novo. *Meyer v. Seidel*, 89 F.4th 117, 128 (2d Cir. 2023).

A.    The *Bivens* Framework

More than fifty years ago, the Supreme Court in *Bivens* recognized an implied cause of action for money damages under the Fourth Amendment when the plaintiff alleged that federal narcotics officers had conducted an unreasonable warrantless arrest and search.    *See* 403 U.S. at 392, 397.    In the following decade, the Court crafted two other damages actions:    first, a Fifth Amendment claim for sex discrimination in a suit brought by a former congressional staffer against a congressman, *see Davis v. Passman*, 442 U.S. 228 (1979); and second, an Eighth Amendment claim for failure to provide adequate medical treatment in a suit brought by a federal prisoner against prison officials, *see Carlson v. Green*, 446 U.S. 14 (1980).    These three cases "represent the only instances in which the Court has approved of an implied damages remedy under the Constitution itself."    *Ziglar*, 582 U.S. at 131.

*Bivens*, *Davis*, and *Carlson* were decided during an "*ancien regime*," when the Supreme Court "assumed it to be a proper judicial function to provide such remedies as are necessary to make effective a statute's purpose" or to "grant the necessary relief when federally protected rights have been invaded."    *Id*. at 131-32 (internal quotation marks omitted).    But the Court has since made clear that "creating a cause of action is a legislative endeavor" that requires "evaluat[ing] a range of policy considerations," such as "economic and governmental concerns, administrative costs, and the impact on governmental operations systemwide."    *Egbert v. Boule*, 596 U.S. 482,

491 (2022) (internal quotation marks omitted). Congress is not only "far more competent than the Judiciary to weigh such policy considerations," but the Judiciary's "authority to do so at all is, at best, uncertain." *Id.* (internal quotation marks omitted). So "it is a significant step under separation-of-powers principles for a court to determine that it has the authority, under the judicial power, to create and enforce a cause of action for damages against federal officials in order to remedy a constitutional violation." *Ziglar*, 582 U.S. at 133. These weighty separation-of-powers concerns make the "expansion of *Bivens* . . . a disfavored judicial activity." *Hernández v. Mesa*, 589 U.S. 93, 101 (2020) (internal quotation marks omitted).

We evaluate potential *Bivens* claims using a "two-step inquiry." *Id.* at 102. First, we ask "whether the case presents a new *Bivens* context"—whether it is "meaningfully different from the three cases in which the Court has implied a damages action."[1] *Egbert*, 596 U.S. at 492 (cleaned up). Second, if the case involves a new context, we "ask whether there are any special factors that counsel hesitation about granting the extension." *Hernández*, 589 U.S. at 102 (cleaned up). A special factor must "cause a court to hesitate before" finding that "the Judiciary is well suited, absent congressional action or instruction, to consider and weigh the costs and benefits of allowing

---

[1] Edwards argues that we may consider additional case law, but this is incorrect. "[T]hree cases—*Bivens*, *Davis*, and *Carlson*—represent the *only* instances in which the Court has approved of an implied damages remedy under the Constitution itself." *Ziglar*, 582 U.S. at 131 (emphasis added).

4

a damages action to proceed." *Ziglar*, 582 U.S. at 136. If there are such factors—"that is, if we have reason to pause before applying *Bivens* in a new context or to a new class of defendants—we reject the request." *Hernández*, 589 U.S. at 102. The Court recently identified a "single question" at the heart of the two-step inquiry: "whether there is any reason to think that Congress might be better equipped to create a damages remedy." *Egbert*, 596 U.S. at 492. "Put another way, the most important question is who should decide whether to provide for a damages remedy, Congress or the courts? If there is a rational reason to think that the answer is 'Congress'—as it will be in *most every case*—no *Bivens* action may lie." *Id.* at 491-92 (emphasis added) (cleaned up).

In short, although the Supreme Court has never overruled *Bivens*, it has tightly cabined it. Over the past forty years, the Court has rejected every attempt to expand *Bivens* that has come before it—twelve times in all, including as recently as 2022. *See id.* at 486.

B.    New Context

Edwards's claim arises in a new context. "A claim may arise in a new context even if it is based on the same constitutional provision as a claim in a case in which a damages remedy was previously recognized," *Hernández*, 589 U.S. at 103, or otherwise "has significant parallels to one of the [Supreme] Court's previous *Bivens* cases," *Ziglar*, 582 U.S. at 147; *see also id.* at 138-46 (rejecting a claim under the Fourth Amendment even though *Bivens* involved a Fourth Amendment claim). Differences that are "meaningful enough to

make a given context a new one," include "the constitutional right at issue," "the statutory or other legal mandate under which the officer was operating," "the presence of potential special factors that previous *Bivens* cases did not consider," or anything else that leads us to conclude that the plaintiff's claim bears "little resemblance to the three *Bivens* claims the [Supreme] Court has approved in the past." *Id.* at 139-40.

This case presents a new *Bivens* context for two independent reasons. First, the asserted constitutional right—an excessive-force claim under the Eighth Amendment—is new. *See, e.g.*, *Farrington v. Diah*, No. 22-13281, 2023 WL 7220003, at *1 (11th Cir. Nov. 2, 2023) ("[A]n excessive force claim under the Eighth Amendment raises a new context."); *Landis v. Moyer*, No. 22-2421, 2024 WL 937070, at *2 (3d Cir. Mar. 5, 2024) (same). *Carlson* involved a different type of claim—cruel-and-unusual punishment under the Eighth Amendment for failure to provide adequate medical treatment to a prisoner. Edwards argues that Eighth Amendment claims for deliberate indifference are an old context for *Bivens* claims. But deliberate indifference and excessive force are different things. And differences in "the constitutional right at issue" are meaningful ones. *Ziglar*, 582 U.S. at 140; *see also id*. at 147 ("[E]ven a modest extension is still an extension.").

Second, claims against officers of the Marshals Service, court-security personnel, and a private prison guard are each a new *Bivens* context. Edwards brings claims against various court-security

personnel, not prison officials as in *Carlson* or federal narcotics agents as in *Bivens*.   *See Corr. Servs. Corp. v. Malesko*, 534 U.S. 61, 68 (2001) ("Since *Carlson* we have consistently refused to extend *Bivens* liability to any new context or new category of defendants."); *see also Logsdon v. U.S. Marshals Serv.*, 91 F.4th 1352, 1358 (10th Cir. 2024) ("[A]gents of the [U.S. Marshals Service] are a new category of defendant."); *Lewis v. Bartosh*, No. 22-3060, 2023 WL 8613873, at *2 (2d Cir. Dec. 13, 2023) (affirming the district court's entry of judgment for Deputy U.S. Marshals because Deputy Marshals are a new class of defendants and the Marshals Service has an alternative remedial scheme for investigating misconduct).   None of the three Supreme Court cases recognizing *Bivens* actions involved members of the Marshals Service, court-security personnel, or private prison guards.[2]   Nor did they involve officers acting to secure a courtroom.   *See* 28 U.S.C. § 566(a) ("It is the primary role and mission of the United States Marshals Service to provide for the security . . . of the United States District Courts . . . as provided by law."); *see also Zigler*, 582 U.S. at 140 ("the statutory or other legal mandate under which the officer was operating" may present a meaningful difference).

---

[2] Judge Robinson's concurrence and the dissent argue that this category of defendants cannot create a new context because the Federal Bureau of Narcotics, the agency at issue in *Bivens*, no longer exists.   But *Davis* and *Carlson* were brought against other classes of defendants—a congressman and prison officials—that do still exist.

In short, this case presents a doubly new *Bivens* context because the Supreme Court has never recognized a *Bivens* remedy concerning this Eighth Amendment right or against this class of defendants.

## C.    Special Factors

Edwards's claim also implicates special factors that counsel against extending *Bivens*.    In particular, Edwards could have sought damages under the FTCA.[3]    When "there are alternative remedial structures in place, that alone, like any special factor, is reason enough to limit the power of the Judiciary to infer a new *Bivens* cause of action."    *Egbert*, 596 U.S. at 493 (internal quotation marks omitted).

Edwards alleges that at least some federal employees assaulted him in the course of their official duties—a type of claim covered by

---

[3] Edwards and the dissent argue that the Supreme Court in *Carlson* concluded that the FTCA does not foreclose relief under *Bivens*.    But when *Carlson* was decided 44 years ago, the Court looked to whether "Congress has provided an alternative remedy which it *explicitly* declared to be a substitute for recovery directly under the Constitution and viewed as equally effective" in assessing whether an alternative remedial scheme forecloses a *Bivens* claim.    446 U.S. at 18-19 (emphasis altered).    Now, the Court "defer[s] to congressional *inaction* if the design of a Government program suggests that Congress has provided what it considers adequate remedial mechanisms."    *Egbert*, 596 U.S. at 501 (emphasis added) (internal quotation marks omitted).    So we must follow the Supreme Court's own recent approach in giving "little weight" to *Carlson*'s conclusion "because it predates [the Court's] current approach to implied causes of action and diverges from the prevailing framework."    *Id.* at 500-01.

8

the FTCA. *See* 28 U.S.C. § 2680(h).[4] The fact that Congress has already created a remedy for this situation is "a convincing reason for the Judicial Branch to refrain from providing a new and freestanding remedy in damages." *Ziglar*, 582 U.S. at 137 (internal quotation marks omitted).[5]

## III. CONCLUSION

"*Bivens*, *Davis*, and *Carlson* were the products of an era when the Court routinely inferred causes of action that were not explicit in

---

[4] Edwards's claim is, at bottom, a tort claim. But even if it were a purely constitutional claim not directly covered by the FTCA, "it is the overall comprehensiveness of the statutory scheme at issue, not the adequacy of the particular remedies afforded, that counsels judicial caution in implying *Bivens* actions." *Dotson v. Griesa*, 398 F.3d 156, 166-67 (2d Cir. 2005). "[T]he question whether a given remedy is adequate is a legislative determination that must be left to Congress, not the federal courts." *Egbert*, 596 U.S. at 498.

[5] Other Courts of Appeals have held that the availability of relief under the FTCA is a special factor that counsels against extending *Bivens* to a new context. *See, e.g.*, *Ketchup v. United States*, No. 23-13219, 2024 WL 2814462, at *2 (11th Cir. June 3, 2024); *Williams v. Keller*, No. 21-4022, 2021 WL 4486392, at *4 (10th Cir. Oct. 1, 2021); *Oliva v. Nivar*, 973 F.3d 438, 444 (5th Cir. 2020); *Schwarz v. Meinberg*, 761 F. App'x 732, 734-35 (9th Cir. 2019). *But see Sargeant v. Barfield*, 87 F.4th 358, 368 n.5 (7th Cir. 2023). And two have held that the "the internal [Marshals Service] grievance procedure and the Department of Justice's Office of the Inspector General (OIG) investigation procedure are adequate alternative remedies" in cases involving the Marshals. *Logsdon*, 91 F.4th at 1359; *Cain v. Rinehart*, No. 22-1893, 2023 WL 6439438, at *4 (6th Cir. July 25, 2023).

the text of the provision that was allegedly violated." *Hernández*, 589 U.S. at 99 (internal quotation marks omitted). That era is over. And the Supreme Court has since made clear that *Bivens* extensions are inappropriate when "there is *any* rational reason (even one) to think that *Congress* is better suited to weigh the costs and benefits of allowing a damages action to proceed." *Egbert*, 596 U.S. at 496 (internal quotation marks omitted).[6] Here, Edwards asks us to extend *Bivens* claims to a doubly new context despite special factors that counsel us to hesitate before doing so. That is Congress's prerogative, not ours. I thus vote to affirm the judgment of the district court.

---

[6] To be fair, the Supreme Court's reluctance to confront the constitutional infirmity of *Bivens* and its mixed messages about *Bivens*'s remaining vitality continue to confuse lower courts. *Egbert*, 596 U.S. at 504 (Gorsuch, *J.*, concurring) (noting that the Court has left the "door ajar" and held out "false hope" that "someone, someday might walk through it even as it devises a rule that ensures no one ever will." (cleaned up)).

ROBINSON, *Circuit Judge*, concurring in the judgment:

I concur in the judgment affirming the district court's dismissal of Edwards's *Bivens* claims. This case involves excessive force claims against Court Security Officers (CSOs), officers of the U.S. Marshals Service, and a private security officer. They are based on actions those officers took while quelling a public courtroom disturbance, rather than effecting an arrest. And because Edwards was allegedly subjected to excessive force *after* his conviction, his claims rely on Eighth Amendment, rather than Fourth Amendment, analysis. In light of these various distinctions from the excessive force claim in *Bivens*, *considered together*, I agree that Edwards's claims are different "in a meaningful way" from the *Bivens* claims that continue to be recognized by the Supreme Court. *See Ziglar v. Abbasi*, 582 U.S. 120, 139 (2017) (cautioning against expanding the *Bivens* remedy to cases that differ "in a meaningful way from previous *Bivens* cases decided by" the Supreme Court).

I write separately to stress that we need not—and should not—hold that any of these individual distinctions, in and of themselves, would necessarily defeat Edwards's ability to seek *Bivens* relief on all of his claims. It is true that the Supreme Court has repeatedly declined to extend *Bivens* beyond its established

applications.  But on twelve different occasions since recognizing a *Bivens* remedy

in *Carlson v. Green*, 446 U.S. 14 (1980), the Supreme Court has—as recently as

2022—*declined* to overrule *Bivens*.[1]  In other words, just as we must take care to

avoid improperly expanding the *Bivens* remedy, we also must follow the Supreme

Court's directive that in the heartland cases, *Bivens* relief remains alive and well.

Even though the Supreme Court held in *Ziglar* that "expanding the *Bivens*

remedy is now a 'disfavored' judicial activity," 582 U.S. at 135 (quoting *Ashcroft v.*

*Iqbal*, 556 U.S. 662, 675 (2009)), the Court also emphasized that *Bivens* remains good

law.  Writing for the Court, Justice Breyer explained:

> [T]his opinion is not intended to cast doubt on the continued force, or
> even the necessity, of *Bivens* in the search-and-seizure context in
> which it arose.  *Bivens* does vindicate the Constitution by allowing
> some redress for injuries, and it provides instruction and guidance to
> federal law enforcement officers going forward.  The settled law of
> *Bivens* in this common and recurrent sphere of law enforcement, and
> the undoubted reliance upon it as a fixed principle in the law, are
> powerful reasons to retain it in that sphere.

*Id*. at 134.

---

[1] *See Chappell v. Wallace*, 462 U.S. 296 (1983); *Bush v. Lucas*, 462 U.S. 367 (1983); *United States v. Stanley*, 483 U.S. 669 (1987); *Schweiker v. Chilicky*, 487 U.S. 412 (1988); *F.D.I.C. v. Meyer*, 510 U.S. 471 (1994); *Correctional Services Corp. v. Malesko*, 534 U.S. 61 (2001); *Wilkie v. Robbins*, 551 U.S. 537 (2007); *Hui v. Castaneda*, 559 U.S. 799 (2010); *Minneci v. Pollard*, 565 U.S. 118 (2012); *Ziglar v. Abbasi*, 582 U.S. 120 (2017); *Hernandez v. Mesa*, 589 U.S. 93 (2020); *Egbert v. Boule*, 596 U.S. 482 (2022).

The *Bivens* remedy has never been limited to claims brought by people harmed in the exact same manner, under the exact same conditions, by the same class of federal officers as those in *Bivens*, *Davis*, and *Carlson*. Rather, the Supreme Court has cautioned against applying *Bivens* to circumstances that are different "in a meaningful way" from the established trilogy of *Bivens* cases.

A case is not meaningfully different just because there is some factual difference from *Bivens*, *Davis*, or *Carlson*. Rather, in *Ziglar*, the Court identified various factors that *might* cause a case to differ in a meaningful way from the *Bivens* trilogy, *depending on that case's particular context*:

> A case might differ in a meaningful way because of the rank of the officers involved; the constitutional right at issue; the generality or specificity of the official action; the extent of judicial guidance as to how an officer should respond to the problem or emergency to be confronted; the statutory or other legal mandate under which the officer was operating; the risk of disruptive intrusion by the Judiciary into the functioning of other branches; or the presence of potential special factors that previous *Bivens* cases did not consider.

*Ziglar*, 582 U.S. at 139–40. The Court did not, however, hold that any one of these factors, by itself, *necessarily* creates a meaningful difference. Put another way, a court cannot simply plug in the factors identified in *Ziglar*. Instead, it must apply those factors to the nature of the claim to determine if the claim itself is meaningfully different.

3

In short, *Bivens* may not spawn new, meaningfully different claims for damages against individual federal agents for violating individuals' constitutional rights, but in its core applications, as our sister circuits have recognized, *Bivens* relief remains viable. *See, e.g.*, *Hicks v. Ferreyra*, 64 F.4th 156, 166–69 (4th Cir. 2023) (holding in context of warrantless seizures of a Secret Service agent by U.S. Park Police that a *Bivens* remedy remains available to address violations of the Fourth Amendment involving unjustified, warrantless searches and seizures by line officers performing routine criminal law enforcement duties and explaining that the Supreme Court's "severe narrowing of the *Bivens* remedy in other contexts does not undermine the vitality of *Bivens* in the warrantless-search-and-seizure context of routine criminal law enforcement"); *Snowdon v. Henning*, 72 F.4th 237, 239–40, 245–46 (7th Cir. 2023) (allowing a "straightforward application of *Bivens* itself" to proceed in a Fourth Amendment claim against a DEA agent for excessive force in making an arrest); *see also Greenpoint Tactical Income Fund LLC v. Pettigrew*, 38 F.4th 555, 564 n.2 (7th Cir. 2022) (explaining that *Egbert v. Boule*, 596 U.S. 482 (2022) "does not change [the court's] understanding of *Bivens*' continued force in its domestic Fourth Amendment context").

4

Especially concerning is the suggestion that *any* excessive force claim against a rank-and-file Deputy U.S. Marshal is meaningfully different from *Bivens*. As Justice Sotomayor recently noted, there are "83 different federal law enforcement agencies with authority to make arrests and provide police protection." *See Egbert*, 596 U.S. at 512 (Sotomayor, J., concurring in the judgment in part and dissenting in part) (citing U.S. Dep't of Justice, Connor Brooks, Federal Law Enforcement Officers, 2016—Statistical Tables (NCJ 251922, Oct. 2019), https://bjs.ojp.gov/content/pub/pdf/fleo16st.pdf [https://perma.cc/ARG9-WTPX]). "[I]f the 'new context' inquiry were defined at such a fine level of granularity, every case would raise a new context, because the Federal Bureau of Narcotics [the agency at issue in *Bivens*] no longer exists." *Id.*

Thus, applying Supreme Court precedent, we should not decide whether any individual factor in Edwards's case, on its own, would preclude *Bivens* relief. Here, we have Eighth Amendment excessive force claims against CSOs, officers of the U.S. Marshals Service, and a private security officer, based on how they responded to a public courtroom outburst. This specific scenario is outside the heartland of *Bivens* cases that remain alive and well.

5

22-654
*Edwards v. Gizzi*

PARKER, *Circuit Judge*, dissenting:

Despite many opportunities to overrule *Bivens*,[1] *Davis*,[2] and *Carlson*,[3] the Supreme Court has continued to reassure us that these cases continue to offer meaningful and ostensibly necessary protection for basic constitutional rights.[4] Though we are cautioned to refrain from expanding the *Bivens* line of cases because that is the work of the Congress, we are also reminded that those cases are alive and well and that lower courts cannot overturn "the settled law of *Bivens*" *sub silentio*. *See, e.g., Ziglar v. Abbasi*, 582 U.S. 120, 134 (2017). As with all our cases, we take the Supreme Court at its word.

Edwards, just like Bivens, brought claims against rank-and-file federal law-enforcement officers for violating his constitutional right to be free from excessive force while in custody. *Bivens*, 403 U.S. at 388. He asserted those claims under the Eighth Amendment, one of the few constitutional provisions for which the Supreme Court has expressly approved the *Bivens* relief Edwards seeks here. *Carlson*, 446 U.S. at 23-24. I do not join my colleagues because I remain unpersuaded that they have convincingly

---

[1] *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971).
[2] *Davis v. Passman*, 442 U.S. 228 (1979).
[3] *Carlson v. Green*, 446 U.S. 14 (1980).
[4] *See Chappell v. Wallace*, 462 U.S. 296 (1983); *Bush v. Lucas*, 462 U.S. 367 (1983); *United States v. Stanley*, 483 U.S. 669 (1987); *Schweiker v. Chilicky*, 487 U.S. 412 (1988); *F.D.I.C. v. Meyer*, 510 U.S. 471 (1994); *Corr. Servs. Corp. v. Malesko*, 534 U.S. 61 (2001); *Wilkie v. Robbins*, 551 U.S. 537 (2007); *Hui v. Castaneda*, 559 U.S. 799 (2010); *Minneci v. Pollard*, 565 U.S. 118 (2012); *Ziglar*, 582 U.S. 120; *Hernandez v. Mesa*, 589 U.S. 93 (2020); *Egbert v. Boule*, 596 U.S. 482 (2022).

articulated why Edward's allegations differ in a meaningful way from previous *Bivens* cases decided by the Supreme Court.

The Supreme Court's observation that a claim may present a "new context" even if it has "has significant parallels to one of the Court's previous *Bivens* cases" sends us down a rocky road. *Ziglar*, 582 U.S. at 147. We derive some assistance from the Court's illustrative examples of how "[a] case *might* differ in a meaningful way" from the *Bivens* heartland. *Id.* at 139-40 (emphasis added). However, we are afforded precious little guidance when we tackle the daunting, real-life task of sorting out from the varied and unique cases that come before us those that are "meaningfully different" from the three in which the Supreme Court expressly approved *Bivens* claims and those whose differences are not meaningful. *Egbert*, 596 U.S. at 492.

The unresolved problem we face is that "[a]t a sufficiently high level of generality, any claim can be analogized to some other claim for which a *Bivens* action is afforded, just as at a sufficiently high level of particularity, every case has points of distinction." *Arar v. Ashcroft*, 585 F.3d 559, 572 (2d Cir. 2009). Calibrating the precise level of granularity at which we assess whether one set of facts differs meaningfully from another remains the core challenge of adjudicating these cases in lower federal courts, substantially because that task is shrouded in so much confusion. But it is nonetheless our duty to draw those distinctions in a manner that is equally as faithful to

2

the Supreme Court's insistence that *Bivens*, *Davis*, and *Carlson* are alive as it is to the Court's instruction that we are not to expand those precedents.

All of this is complicated by the fact the Supreme Court has begun to tell that *Bivens* is, for all intents and purposes, a relic of an "*ancien regime*." *See Hernandez v. Mesa*, 589 U.S. 93, 99 (2020); *Ziglar*, 582 U.S. at 131 (quoting *Alexander v. Sandoval*, 532 U.S. 275, 287 (2001)). The import of that characterization is unclear. After all, volume after volume of the U.S. Reports catalogues "ancient regimes" that unquestionably remain good law and indeed are essential to our constitutional democracy. Still, regardless of how "ancient" one may be inclined to view constitutional torts jurisprudence dating between 1971 and 1980, there is no escaping the fundamental constraint that so long as *Bivens*, *Davis*, and *Carlson* remain "good" law, lower courts are constitutionally foreclosed from reading the Supreme Court's latest doubts about *Bivens*' supposed origins in a manner that would functionally overturn those precedents.

But this is where even more serious analytical problems start. It is difficult to understand or articulate why the Constitution creates liability on the one hand for federal officers who are deliberately indifferent to custodial abuses but, on the other hand, immunizes federal officers who actively participate in custodial abuses. *See Carlson*, 446 U.S. at 16 n.1. And in this case, the path to concluding that Edwards' excessive-force allegations "differ[] in a meaningful way from previous *Bivens* cases

3

decided by th[e Supreme] Court" forces us to abandon what the Supreme Court has repeatedly told us is true: that the Constitution supplies a claim where rank-and-file federal law enforcement officers are alleged to have violated the constitutional right to be free from excessive force. *Egbert*, 596 U.S. at 502 (2022) (declining to reconsider *Bivens*).

It cannot be that Edwards' claims threaten an impermissible expansion of *Bivens* on the theory that it names "a new class of defendants" – *i.e.*, Deputy U.S. Marshals – simply because no U.S. Marshals were sued in *Bivens.* As the second concurrence points out, the *Bivens* defendants were agents of the Federal Bureau of Narcotics, an agency that *no longer exists.* *See* Concurring Op. (Robinson, J.), at *5 (citing *Egbert*, 596 U.S. at 512 (Sotomayor, J., concurring in part and dissenting in part)). It necessarily follows that if employees of a nominally different agency are "a new class of defendants," then *Bivens* itself no longer exists. In other words, we are nonplussed as to how *Bivens* remains good law if future cases alleging the same constitutional violations will fail unless and until the federal government recharters or renames one of its agencies "Federal Bureau of Narcotics." It certainly bears noting that the now-defunct Federal Bureau of Narcotics was housed within the U.S. Department of Justice, right alongside the U.S. Marshals Service.

The second concurrence appears to recognize some of the many problems that will flow from resolving this case on any of the distinctions that have been employed to

4

present it as a potential *Bivens* "expansion." *Id.* Despite sowing doubts about whether any one of those distinctions has any legal meaning on its own, the opinion nonetheless goes on to conclude that the result changes when these "distinctions" are "*considered together*" – but without telling us why. *Id.* at \*1 (emphasis in original). It gives us no guidance on how those factors combine, how they relate to one another, the weight that each ought to be given, or anything else capable of illuminating the point at which a combination of legally insufficient distinctions morphs into a meaningful difference.

In any event, even if we assume arguendo that this case presents a "meaningfully different" *Bivens* context, we are supplied with no "special factors" counseling against the availability of *Bivens* remedy for the constitutional violation that Edwards alleges. The existence of the Federal Tort Claims Act, which imposes liability against the United States and not against individual officers – is clearly not an "alternative remedial scheme" for a constitutional remedy that is centered entirely individual officer deterrence. *Corr. Servs. Corp. v. Malesko*, 534 U.S. 61, 70-71 (2001) ("Bivens . . . is concerned solely with deterring the unconstitutional acts of individual officers."). It is in part for this reason that the Supreme Court has declined to extend *Bivens* to employees of private contractors presumably subject to vicarious liability. For instance, in *Malesko* – the case *Egbert* highlights to suggest that a "new category of defendants" can portend a "new context" under *Bivens* – the Supreme Court declined to extend *Bivens* to claims against a private Bureau of Prisons contractor on the theory that *Bivens*

5

is intended to deter individual officers and that its deterrent effect is lost if liability runs to the employer: "[I]f a corporate defendant is available for suit, claimants will focus their collection efforts on it, and not the individual directly responsible for the alleged injury." *Id.* at 62; *see Egbert*, 596 U.S. at 492-93. Edwards seeks relief from individual rank-and-file federal law enforcement officers who, in the course of their work, are alleged to have violated the constitutional right to be free from excessive force. This is precisely the class of officers whom *Bivens* is designed to deter from committing constitutional violations, and it is precisely the type of claim that *Bivens* has always been thought to cover.

In sum, the fact that the Supreme Court continues to express serious doubts about *Bivens*' future does not, in my view, grant a license to *sub silentio* do for the Supreme Court what it has thus far been unwilling to do itself. If the Supreme Court plans to take away important protections against constitutional violations and allow federal officials to act unconstitutionally without consequence unless and until Congress acts, then it should face the nation and say as much. It should not delegate that work to us.

Until then, we must not forget that there is a reason our constitutional system preserves remedies like the one contemplated in *Bivens*: to protect people from illegal actions by the Executive (or members of Congress)[5] for which there would otherwise be

---

[5] *Davis*, 442 U.S. at 245.

no meaningful consequence or repair.  As Justice Scalia emphasized in *Armstrong v. Exceptional Child Center, Inc.*, judge-made remedies have played a critical role in the "long history of judicial review of illegal executive action, tracing back to England."  575 U.S. 320, 327 (2015).