23-7625-cv
*Sigalovskaya v. Braden et al.*

# In the
# United States Court of Appeals
# For the Second Circuit

_____

August Term, 2024
(Argued December 3, 2024; Decided August 27, 2025)

No. 23-7625-cv
_____

KARINA SIGALOVSKAYA,

*Plaintiff-Appellant,*

v.

SPECIAL AGENT ABIGAIL BRADEN, SPECIAL AGENT LUANN WALTER, SPECIAL AGENT MEGAN BUCKLEY and SPECIAL AGENT ROBERT MANCENE, Individually and in their Official Capacity as Special Agents,

*Defendants-Appellees.*<sup>*</sup>

_____

Before:     LYNCH, LEE, and PÉREZ, *Circuit Judges.*

Plaintiff-Appellant Karina Sigalovskaya brought claims of false arrest, malicious prosecution, abuse of process, and the denial of a fair trial against Abigail Braden, Luann Walter, Megan Buckley, and Robert Mancene (collectively, "Defendants"), four special agents of the Homeland Security Investigations ("HSI") unit within the Department of Homeland Security ("DHS"). These claims

---

<sup>*</sup> The Clerk of the Court is respectfully directed to amend the case caption as set forth above.

arose from a 2013 incident in which the HSI special agents allegedly unlawfully entered and searched Sigalovskaya's home, separated her from her children, and fabricated evidence by falsely accusing her of making a confession that ultimately resulted in Sigalovskaya's arrest and subsequent pretrial detention. Following summary judgment, three claims and two defendants remained: false arrest and malicious prosecution claims against Braden and a failure-to-intervene claim against Mancene. Before trial was set to commence, Defendants moved for judgment on the pleadings, contending that the Supreme Court's then-recent decision in *Egbert v. Boule*, 596 U.S. 482 (2022), foreclosed Sigalovskaya's remaining claims. The district court granted the motion, concluding that following *Egbert*, Sigalovskaya has no cause of action under *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971). *See Sigalovskaya v. Braden*, No. 15-CV-34 (LDH), 2023 WL 6385761, at *4–7 (E.D.N.Y. Sept. 29, 2023). On appeal, Sigalovskaya challenges the district court's dismissal of her false arrest and malicious prosecution claims. The judgment of the district court is affirmed.

Judge Lee concurs in the judgment in a separate opinion.

Judge Pérez concurs in the judgment in a separate opinion.

Judge Lynch dissents in part in a separate opinion.

——————————————————

JON L. NORINSBERG, Jon L. Norinsberg, Esq., PLLC, New York, NY, *for Plaintiff-Appellant*.

DARA A. OLDS (Varuni Nelson, *on the brief*), Assistant United States Attorneys, *for* Breon Peace, United States Attorney for the Eastern District of New York, Brooklyn, NY, *for Defendants-Appellees.*

——————————————————

2

PER CURIAM:

Plaintiff-Appellant Karina Sigalovskaya brought claims of false arrest, malicious prosecution, abuse of process, and the denial of a fair trial against Abigail Braden, Luann Walter, Megan Buckley, and Robert Mancene (collectively, "Defendants"), four special agents of the Homeland Security Investigations ("HSI") unit within the Department of Homeland Security ("DHS"). These claims arose from a 2013 incident in which the HSI special agents allegedly unlawfully entered and searched Sigalovskaya's home, separated her from her children, and fabricated evidence by falsely accusing her of making a confession that ultimately resulted in Sigalovskaya's arrest and subsequent pretrial detention. Following summary judgment, three claims and two defendants remained: false arrest and malicious prosecution claims against Braden and a failure-to-intervene claim against Mancene. Before trial was set to commence, Defendants moved for judgment on the pleadings, contending that the Supreme Court's then-recent decision in *Egbert v. Boule*, 596 U.S. 482 (2022), foreclosed Sigalovskaya's remaining claims. The district court granted the motion, concluding that following *Egbert*, Sigalovskaya has no cause of action under *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971). *See Sigalovskaya v. Braden*, No. 15-

3

CV-34 (LDH), 2023 WL 6385761, at *4–7 (E.D.N.Y. Sept. 29, 2023). On appeal, Sigalovskaya challenges the district court's dismissal of her false arrest and malicious prosecution claims. The judgment of the district court is affirmed.

EUNICE C. LEE, *Circuit Judge*, concurring:

Appellant Karina Sigalovskaya alleges that during a warrantless entry and search of her home, a federal law enforcement officer falsely claimed that she confessed to taking pornographic images of her own child. According to Sigalovskaya, this falsified evidence resulted in her arrest on felony criminal charges, temporary loss of guardianship of her two children, and placement on the New York sex offender registry. Although Sigalovskaya's allegations are certainly grievous, I find that, in keeping with the Supreme Court's jurisprudence on damages claims against federal officers, the district court properly concluded that Sigalovskaya does not have a cause of action under *Bivens* because (1) her claims are rooted in the alleged fabrication of evidence, which is a context meaningfully different from that of *Bivens*, and (2) there are special factors that weigh against extending *Bivens* here.

## BACKGROUND[1]

On February 11, 2013, HSI Special Agents Braden, Walter, Buckley, and Mancene, then employed within the HSI's Child Exploitation Group, arrived at Sigalovskaya's Brooklyn apartment, seeking to arrest Evidal Ifraimov,

---

[1] The factual allegations in Sigalovskaya's operative amended complaint are accepted as true for the purposes of these proceedings.

Sigalovskaya's common-law husband. HSI had been investigating Ifraimov for approximately eight months on allegations of possession of child pornography.

Upon their arrival, the special agents "pound[ed]" on the door and yelled "police." Am. Compl. ¶¶ 9–10, *Sigalovskaya v. Braden*, No. 15-CV-34 (LDH) (E.D.N.Y. Feb. 12, 2016), Dkt. No. 16. After Sigalovskaya immediately answered the door, Special Agents Walter, Buckley, and Mancene forced their way into the apartment without obtaining Sigalovskaya's consent to enter. Once inside the apartment, Special Agents Walter, Buckley, and Mancene separated Sigalovskaya from her two children and, again without her consent, searched the apartment after Sigalovskaya informed them that her husband was not home.

While the search was ongoing, Ifraimov called Sigalovskaya. The agents demanded that she answer the call on speakerphone and speak to him in English.

After speaking to Ifraimov, Sigalovskaya received a call from his attorney, who instructed her to tell the police, "Leave my house now, you are trespassing," which Sigalovskaya did. *Id.* ¶¶ 28–29 (emphasis omitted). Despite this directive, the special agents remained in Sigalovskaya's home, conferring amongst themselves for about ten minutes before Special Agent Braden returned to the

2

room where Sigalovskaya was being held and demanded that she write a statement.

Sigalovskaya alleges that Special Agents Walter, Buckley, and Mancene began to "lob[]" accusations that she had helped a "grown man"—Ifraimov—"touch a girl inappropriately." *Id.* ¶ 33. Further, Special Agent Braden claimed that she had proof of Ifraimov's unlawful activities and proceeded to show Sigalovskaya two redacted non-pornographic photographs depicting Sigalovskaya's five-year-old daughter from the waist up, clothed in a long-sleeve shirt. When asked if she recognized the girl in the photos and where the photos were taken, Sigalovskaya responded that the girl was her daughter and that it appeared the photos had been taken in one of the rooms of her home. However, Sigalovskaya denied taking the photographs. Notwithstanding this denial, Special Agent Braden "falsely" claimed that Sigalovskaya had confessed to taking the purportedly pornographic photographs and stated that her eleven-year-old son also participated in taking such pictures. *Id.* ¶¶ 47–48. The special agents "then forwarded these false and misleading statements" to the U.S. Attorney's Office for the Eastern District of New York. *Id.* ¶ 52.

"As a result of defendants' false 'evidence,'" Sigalovskaya was arrested and charged with a violation of 18 U.S.C. § 2251(a), sexual exploitation of children, and 18 U.S.C. § 2252(a)(4)(B), certain activities relating to material involving the sexual exploitation of minors. *Id.* ¶ 55. Sigalovskaya was denied bail at her arraignment and consequently held at the Metropolitan Detention Center for approximately three weeks, where she was subjected to invasive strip searches, propositioned by other inmates, and exposed to inmates with communicable diseases.

Then, on March 5, 2013, all charges against Sigalovskaya were dropped following a motion to dismiss filed by the U.S. Attorney's Office. Despite the dismissal, the New York State Administration for Children Services ("ACS") filed a petition to permanently revoke Sigalovskaya's guardianship over her two children, which resulted in Sigalovskaya being unable to see or speak to her children for three months. After multiple court appearances and legal fees, Sigalovskaya regained full custody of her children, but was required to have ACS visit her apartment twice per month for a period of time. Additionally, Sigalovskaya was placed on the New York State Sex Offender Registry.

On January 6, 2015, Sigalovskaya initiated the underlying civil action and filed her amended, operative complaint on February 12, 2016. Following the close

of discovery, Defendants moved for summary judgment. On March 15, 2019, the district court granted the motion for summary judgment in part, dismissing Sigalovskaya's fair trial claim as duplicative of the malicious prosecution claim, dismissing the abuse of process claim as an unrecognized cause of action under *Bivens*, and dismissing the false arrest and malicious prosecution claims against Special Agents Walter and Buckley, as well as the malicious prosecution claim against Special Agent Mancene, based on a finding that the special agents lacked the kind of personal involvement necessary to sustain these claims against them. However, the district court denied the motion for summary judgment with respect to Sigalovskaya's false arrest and malicious prosecution claims against Special Agent Braden, finding that there remained a genuine dispute of material fact as to whether Special Agent Braden had probable cause to arrest Sigalovskaya. The district court also denied the motion for summary judgment as to Sigalovskaya's false arrest claim against Special Agent Mancene, determining that the claim could proceed under a failure-to-intervene theory. The district court further concluded that neither Mancene nor Braden were entitled to qualified immunity on summary judgment.

Following the district court's decision, the only remaining claims were the false arrest and malicious prosecution claims against Special Agent Braden and the failure-to-intervene claim against Special Agent Mancene. Although the trial was set for October 7, 2019, due to scheduling conflicts and the COVID-19 pandemic, it was rescheduled for October 11, 2022.

On June 8, 2022, four months before trial was set to begin, the Supreme Court rendered its decision in *Egbert v. Boule*, which held that a plaintiff could not assert a Fourth Amendment excessive force claim and a First Amendment retaliation claim against a U.S. Border Patrol agent under *Bivens*. 596 U.S. at 494, 497. Thereafter, on September 15, 2022, Defendants filed a motion for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c), contending that, following *Egbert*, Sigalovskaya's false arrest, malicious prosecution, and failure-to-intervene claims presented new contexts under *Bivens* and that special factors militated against extending a *Bivens* remedy for those claims.[2]

On September 29, 2023, after supplemental briefing on the matter, the district court granted the motion for judgment on the pleadings, dismissing

---

[2] On August 26, 2022, Defendants filed a letter, giving Sigalovskaya and the district court notice of their intent to file the motion for judgment on the pleadings. On September 15, 2022, Defendants' motion, along with Sigalovskaya's opposition, was formally filed with the district court.

Sigalovskaya's remaining claims. Applying the two-step analysis for evaluating *Bivens* claims developed in *Ziglar v. Abbasi*, 582 U.S. 120 (2017), and refined in *Egbert*, the district court concluded that: (1) Sigalovskaya's malicious prosecution and failure-to-intervene claims arose as new *Bivens* contexts, since *Bivens* did not involve such claims; (2) although the false arrest claim "ha[d] parallels to *Bivens*," because the federal agency here differed from the federal agency in *Bivens*, and the fabrication of evidence was the primary "focus of [Sigalovskaya's] complaint," the false arrest claim was also a new *Bivens* context; and (3) special factors, including the existence of alternative remedies for relief, foreclosed any *Bivens* remedy for Sigalovskaya's claims. *Sigalovskaya*, 2023 WL 6385761 at *4–6. This appeal followed.

## DISCUSSION

We review a district court's dismissal of a complaint pursuant to a Rule 12(c) motion for judgment on the pleadings *de novo*, "accepting all factual allegations in the [c]omplaint as true and drawing all reasonable inferences in the nonmoving party's favor." *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 78 (2d Cir. 2015) (alterations adopted) (internal quotation marks omitted). Sigalovskaya contends

7

that her Fourth Amendment, false arrest, and malicious prosecution claims should be allowed to proceed to trial as viable *Bivens* claims.

## A. The *Bivens* Framework

In 1971, the Supreme Court rendered its decision in *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, recognizing for the first time an implied damages action "to compensate persons injured by federal officers who violated the [Fourth Amendment's] prohibition against unreasonable search and seizures." *Abbasi*, 582 U.S. at 131 (citing *Bivens*, 403 U.S. at 397). In the years that followed, the Supreme Court recognized an implied cause of action for constitutional violations in two other contexts. In *Davis v. Passman*, 442 U.S. 228, 248–49 (1979), the Court held that under the Due Process Clause of the Fifth Amendment, an administrative assistant had the right to sue a congressman for firing her based on gender discrimination. A year later, in *Carlson v. Green*, 446 U.S. 14, 17–19 (1980), the Court recognized the right of prisoners to bring a cruel and unusual punishment claim under the Eighth Amendment against federal prison officials for failing to provide adequate medical treatment.

"These three cases—*Bivens*, *Davis*, and *Carlson*—represent the only instances in which the Court has approved of an implied damages remedy under the

Constitution itself." *Abbasi*, 582 U.S. at 131. In the more than four decades since the Supreme Court last endorsed the creation of an implied cause of action arising from constitutional violations, it has "consistently refused to extend *Bivens* liability to any new context or new category of defendants." *Corr. Servs. Corp. v. Malesko*, 534 U.S. 62, 68 (2001); *see also Egbert*, 596 U.S at 486 (citing eleven cases in which the Court declined to create an implied damages remedy under *Bivens*). This is because, as the Supreme Court made clear in *Egbert*, "creating a cause of action is a legislative endeavor . . . [a]nd the Judiciary's authority to do so at all is, at best, uncertain." 596 U.S. at 491.

Though "recognizing a cause of action under *Bivens* is 'a disfavored judicial activity,'" the Supreme Court has not "dispense[d] with *Bivens* altogether." *Id.* (quoting *Abbasi*, 582 U.S. at 135). To that end, in analyzing a proposed claim under *Bivens*, courts generally apply the two-step framework articulated in *Abbasi*. *See Abbasi*, 582 U.S. at 139. Under *Abbasi's* two-step framework, a court first considers "whether the case presents 'a new *Bivens* context'—*i.e.*, is it 'meaningfully' different from the three cases in which the [Supreme] Court has implied a damages action." *Egbert*, 596 U.S. at 492 (alteration adopted) (quoting *Abbasi*, 582 U.S. at 139). "[I]f a claim arises in a new context," the court then considers whether there

9

are "'special factors' indicating that the Judiciary is at least arguably less equipped than Congress to 'weigh the costs and benefits of allowing a damages action to proceed.'" *Id.* (quoting *Abbasi*, 582 U.S. at 136). "[T]h[e]se steps often"—but not necessarily always—"resolve to a single question: whether there is any reason to think that Congress might be better equipped to create a damages remedy." *Id.*

## B. New Context Analysis

The Supreme Court's "understanding of a new [*Bivens*] context is broad." *Hernandez v. Mesa*, 589 U.S. 93, 102 (2020) (internal quotation marks omitted). Though not exhaustive, factors that give rise to a new *Bivens* context include

> the rank of the officers involved; the constitutional right at issue; the generality or specificity of the official action; the extent of judicial guidance as to how an officer should respond to the problem or emergency to be confronted; the statutory or other legal mandate under which the officer was operating; the risk of disruptive intrusion by the Judiciary into the functioning of other branches; or the presence of potential special factors that previous *Bivens* cases did not consider.

*Abbasi*, 582 U.S. at 140.

On appeal, Sigalovskaya concedes that her malicious prosecution claim arises under a new *Bivens* context but contends that the false arrest claim falls squarely within a Fourth Amendment claim under *Bivens*. In finding otherwise, the district court concluded that following *Egbert*, the involvement of a federal

10

agency that differed from the federal agency in *Bivens* was sufficient to create a new context. *See Sigalovskaya*, 2023 WL 6385761, at \*5. Accordingly, the district court determined that because this case involves HSI special agents rather than agents of the former Federal Bureau of Narcotics, the case at bar "involves a new category of defendants," and thus the false arrest claim presented a new *Bivens* context. *Id.* Sigalovskaya asserts that the district court's determination is erroneous because (1) *Egbert* pronounced no such "new rule" that the difference in agency is now sufficient to find a new context; and (2) if taken to its logical conclusion, the district court's ruling would "preclude Fourth Amendment search-and-seizure claims under *Bivens* altogether" since federal agents no longer work for the defunct Federal Bureau of Narcotics. Appellant's Br. at 24–26.

Sigalovskaya raises sound and persuasive arguments for why the district court incorrectly concluded that after *Egbert*, the difference in agency alone suffices to find that the false arrest claim presents a new *Bivens* context. First, as Sigalovskaya notes, in *Egbert*, the Supreme Court did not devote *any* substantive discussion to the new context inquiry. Rather, the Court simply noted that the Ninth Circuit accepted, without discussion, that the "Fourth Amendment claim [alleging excessive force] presented a new context for *Bivens* purposes," and then

11

engaged in an in-depth analysis of the special factors inquiry. *Egbert*, 596 U.S. at 494. Defendants nevertheless argue that *Egbert* does inform the new context analysis of Sigalovskaya's claims because we have, on at least two occasions following *Egbert*, affirmed district court decisions finding that claims raised against "a new category of defendants" presented a new *Bivens* context, *see Lewis v. Bartosh*, No. 22-3060-pr, 2023 WL 8613873, at *2 (2d Cir. Dec. 13, 2023) (summary order) (internal quotation marks omitted); *Cohen v. Trump*, No. 23-35, 2024 WL 20558, at *2 (2d Cir. Jan. 2, 2024) (summary order) (internal quotation marks omitted).

However, not only are *Lewis* and *Cohen* non-precedential decisions, but unlike the special agents involved here, the category of defendants in each of those cases is notably distinguishable from the type of law enforcement officers in *Bivens*. As noted earlier, the Supreme Court has instructed that in determining whether a case presents a new *Bivens* context, courts are to consider, among others factors, "the rank of the officers involved" and the "statutory or other legal mandate" under which they operate. *Abbasi*, 582 U.S. at 140. It is therefore unsurprising that in *Lewis* and *Cohen*, respectively, we summarily affirmed the dismissal of claims against high-ranking officials of the Executive Branch, including a former U.S.

President, and Deputy Marshals charged under law with overseeing the protection of the Judicial Branch, where these categories of defendants differ from that of the line-level, criminal law enforcement officers involved in both *Bivens* and the instant action. *See Lewis*, 2023 WL 8613873, at *1; *Cohen*, 2024 WL 20558, at *1.

Moreover, as Sigalovskaya convincingly argues, the dismissal of a Fourth Amendment *Bivens* claim based solely on the difference in federal agency would, if taken to its logical conclusion, preclude a damages remedy for any *Bivens* search-and-seizure claim since the Federal Bureau of Narcotics—the agency at issue in *Bivens*—no longer exists. Such a conclusion would be contrary to the Supreme Court's jurisprudence, as the Court has not "dispense[d] with *Bivens*." *Egbert*, 596 U.S. at 491; *see also Hicks v. Ferreyra*, 64 F.4th 156, 166 (4th Cir. 2023) (The "severe narrowing of the *Bivens* remedy in other contexts does not undermine the vitality of *Bivens* in the warrantless-search-and-seizure context of routine criminal law enforcement.").

While I find the federal agency distinction unpersuasive, the district court did not rely on this argument as the sole basis for its conclusion that Sigalovskaya's false arrest claim arises under a new *Bivens* context. The district court also concluded that the false arrest claim presented a new *Bivens* context because "the

13

focus of [Sigalovskaya's] complaint is the fabrication of evidence that led to her arrest and prolonged detention." *Sigalovskaya*, 2023 WL 6385761, at *5. This "type of misconduct," the district court reasoned, was "new" and meaningfully different from the misconduct at issue in *Bivens*—an "illegal entry" into the plaintiff's home "during which agents searched [the home] 'from stem to stern' after [the plaintiff] had been 'manacled'" in front of his wife and children. *Id.* (quoting *Bivens*, 403 U.S. at 389). I conclude that on this point, the district court did not err.

Sigalovskaya argues that the district court "placed undue emphasis on [her] false confession claim," without recognizing the extensive search-and-seizure allegations raised in the complaint that are inextricably intertwined with the false confession allegations. Appellant's Br. at 28, 30–31. Specifically, she contends that the allegations in her complaint fall squarely within *Bivens* because in it, she alleged, among other things, that:

> i) Defendants proceeded to force their way past [Sigalovskaya] into her apartment, without obtaining her consent to enter the premises; ii) Defendants did not have an arrest warrant for [her]; iii) Defendants had not attempted to obtain an arrest warrant for [her] prior to entering her apartment; iv) [a]t the time when Defendant Special Agents entered the apartment on February 11, 2013, Defendants knew that they had no evidence against Plaintiff; v) [w]hen [Sigalovskaya] informed defendant Special Agents that her common-law husband, Evidal Ifraimov, was not home, Defendants began to unlawfully search her apartment; and vi) [o]n the advice of counsel,

14

[Sigalovskaya] instructed Defendants to "leave my house now, you are trespassing," but Defendants refused to do so.

*Id.* at 28 (internal quotation marks and emphases omitted). Sigalovskaya asserts that these allegations are "on all four with *Bivens*" given that "[b]oth cases involve a warrantless entry . . . a warrantless search inside of Plaintiff's apartment . . . [and] a warrantless arrest inside of Plaintiff's residence." *Id.* at 29.

Though Sigalovskaya's complaint contains allegations of an unlawful search and seizure, I am unconvinced that these allegations suffice to find that the claim at issue—the false arrest claim—does not present a new *Bivens* context. First, it is important to note that at this stage of the proceedings, Sigalovskaya's false arrest claim remains viable only against Special Agent Braden. Sigalovskaya has not challenged the district court's grant of partial summary judgment in favor of Defendants, which dismissed the claims against Special Agents Buckley and Walter, and thus, any arguments that Sigalovskaya may have had regarding that decision are abandoned. *See Chunn v. Amtrak*, 916 F.3d 204, 206 n.1 (2d Cir. 2019). Moreover, Sigalovskaya has also expressly stated that she "appeals the District Court's dismissal of her false arrest and malicious prosecution claims, but not her failure to intervene claim." Appellant's Br. at 16 n.2. Thus, the question is whether, as asserted against Special Agent Braden, Sigalovskaya's false arrest claim is in line

15

with *Bivens*.  In reviewing the amended complaint at face value, I find that the answer to this question is no.

Importantly, the allegations in the complaint that could give rise to an unlawful search and seizure claim are levied against the other special agents, but not Special Agent Braden.  In one paragraph, the complaint states that "Special Agent Luann Walter, Special Agent Megan Buckley, and Special Agent Robert Mancene," *but not Special Agent Braden*, "proceeded to force their way past [Sigalovskaya] into her apartment, without obtaining her consent to enter the premises."  Am. Compl. ¶ 12.  In a subsequent paragraph, the complaint alleges that "Special Agent Luann Walter, Special Agent Megan Buckley, and Special Agent Robert Mancene," *but not Special Agent Braden*, "immediately separated [Sigalovskaya] from her two children."  *Id.* ¶ 13.  Thereafter, the complaint states that it was "Special Agent Luann Walter, Special Agent Megan Buckley, and Special Agent Robert Mancene," *but not Special Agent Braden*, who "began frantically searching the apartment."  *Id.* ¶ 14.  Consequently, Sigalovskaya's complaint charges the other special agents—not the one with whom her false arrest claim remains potentially viable—with unlawfully entering and searching her home, and separating her from her children.

16

Moreover, Sigalovskaya's complaint makes it clear that what precipitated her arrest, and what is at the crux of her false arrest claim, is the allegation that Special Agent Braden falsely claimed that Sigalovskaya had confessed to taking the purportedly pornographic pictures of her daughter, and then forwarded the fabricated evidence to the U.S. Attorney's Office. *See* Am. Compl. ¶¶ 46–49, 52. Indeed, the complaint expressly states that it was the "false evidence" that resulted in Sigalovskaya's arrest. *Id.* ¶ 55 (internal quotation marks omitted). Thus, though Sigalovskaya alleges that she had been arrested and detained without probable cause, *id.* ¶ 94, unlike the plaintiff in *Bivens*, her false arrest claim centers on the allegation of fabricated evidence, rather than a warrantless search or seizure offending "primarily rights of privacy." *Bivens*, 403 U.S. at 390; *see also id.* at 408 (Harlan, *J.*, concurring) ("The personal interests protected by the Fourth Amendment are those we attempt to capture by the notion of 'privacy.'").[3]

In recent years, our sister circuits have found that claims involving the fabrication of evidence present a new *Bivens* context. *See, e.g.*, *Sheikh v. U.S. Dep't of Homeland Sec.*, 106 F.4th 918, 925 (9th Cir. 2024) (finding that a Fourth

---

[3] Notably, Sigalovskaya does not meaningfully dispute the district court's finding that although "the amended complaint contains allegations concerning the Defendants search of her home, . . . [Sigalovskaya] does not bring a cause of action based upon those facts." *Sigalovskaya*, 2023 WL 6385761, at *5 n.4.

Amendment claim against HSI agents based on an allegation of fabricated evidence that led to the plaintiff's indictment presented a new context under *Bivens*); *Ahmed v. Weyker*, 984 F.3d 564, 568–70 (8th Cir. 2020) (finding that a false arrest claim based on a police officer's allegedly false information that led to the plaintiff's warrantless arrest constituted a new context); *Cantú v. Moody*, 933 F.3d 414, 423 (5th Cir. 2019) (concluding that an unlawful seizure claim under the Fourth Amendment presented a new context when the claim was based on officers falsifying affidavits rather than an allegation that the officers "entered his home without a warrant or violated his rights of privacy"); *see also Annappareddy v. Pascale*, 996 F.3d 120, 136 (4th Cir. 2021) (finding that a plaintiff's Fourth Amendment false arrest claim against federal investigators presented a new context, in part, because the "alleged misdeeds" were different than those at issue in *Bivens*, seeing as "sharing information with prosecutors and other investigators" is "a different part of police work than the apprehension, detention, and physical searches at issue in *Bivens*" (quoting *Farah v. Weyker*, 926 F.3d 492, 498–99 (8th Cir. 2019))).

As in these other cases, and as explained above, Sigalovskaya's false arrest claim is rooted in her allegation that Special Agent Braden falsified evidence that

resulted in her arrest and prolonged detention, not in any of the allegations surrounding an unlawful search and seizure in her home. Accordingly, while Sigalovskaya's case draws parallels to *Bivens*, in the decades since last endorsing the creation of an implied damages remedy for constitutional violations, the Supreme Court has made clear that "a modest extension [of *Bivens*] is still an extension," *Abbasi*, 582 U.S. at 147, "even if [the claim] is based on the same constitutional provision," *Hernandez*, 589 U.S. at 103. For these reasons, I find that Sigalovskaya's false arrest claim presents a new *Bivens* context.

C. Special Factors Analysis

Sigalovskaya argues that even if her false arrest claim presents a new context, there are no special factors counseling against extending *Bivens* to either this claim or the malicious prosecution claim. As to this issue, Sigalovskaya raises three main arguments, none of which I find persuasive.

First, Sigalovskaya argues that *Egbert* and the Supreme Court's more recent *Bivens* cases—*Hernandez* and *Abbasi*—"together . . . stand for the proposition that a *Bivens* claim will not lie where 'national security is at issue.'" Appellant's Br. at 34 (quoting *Egbert*, 596 U.S. at 494). Thus, according to Sigalovskaya, because there are no national security concerns at issue in this case, the special factors identified

by the Supreme Court through its recent jurisprudence are inapplicable here. While it is true that *Egbert*, *Hernandez*, and *Abbasi* arose within the context of national security matters, those cases do not stand for the proposition that the special factors inquiry merely considers whether national security concerns are at issue. Rather, the critical question, as analyzed below, is and has always been "whether there is *any* rational reason (even one) to think that *Congress* is better suited to 'weigh the costs and benefits of allowing a damages action to proceed.'" *Egbert*, 596 U.S. at 496 (quoting *Abbasi*, 582 U.S. at 136).

But even if Sigalovskaya were correct that the Supreme Court's more recent *Bivens* cases were primarily focused on national security, it is possible, if not probable, that national security concerns could be implicated by extending a *Bivens* remedy to Sigalovskaya's claims against an HSI special agent. As the district court noted, HSI, as the principal investigative body of DHS, operates both nationally *and* internationally. *See Sigalovskaya*, 2023 WL 6385761, at *6. Sigalovskaya does not dispute this fact but rather attempts to shift the focus to the fact that the agents here were "domestic law enforcement agents" investigating traditional criminal law. Appellant's Br. at 19–20, 35. However, *Egbert* instructs us that "the special factors analysis" cannot be applied "at such a narrow level of generality" that a

20

court only looks to the claims as asserted against the *specific* federal agent(s) involved in the case. 596 U.S. at 496 (alteration adopted) (internal quotation marks omitted). Accordingly, the fact that Sigalovskaya has brought claims against a special agent investigating traditional criminal law domestically says little, if anything at all, about the potential implications of extending a *Bivens* remedy to false arrest and malicious prosecution claims against HSI special agents more generally.

Second, Sigalovskaya argues that the district court erred in finding that 8 C.F.R. § 287.10 provided an alternative remedy to her *Bivens* claims because that regulation applies to immigration officers, not HSI agents. Despite Sigalovskaya's arguments to the contrary, following *Egbert*, the grievance procedure under § 287.10 provides an alternative remedy that does foreclose Sigalovskaya's claims.

Section 287.10 provides, in pertinent part, that "[a]ny persons wishing to lodge a complaint pertaining to violations of enforcement standards contained in § 287.8 may contact the Department of Homeland Security, Office of the Inspector General" and that such alleged violations "shall be investigated expeditiously." 8 C.F.R. § 287.10(a)–(b). Sigalovskaya contends that this regulation only applies to immigration officers because § 287.8, which is incorporated by reference, states

21

that the "standards for enforcement activities contained in this section must be adhered to by every immigration officer involved in enforcement activities," *id.* § 287.8. But under that regulation, immigration officers encompass special agents. *See id.* § 287.8(a)(1)(iv) (providing that special agents who have completed basic immigration law enforcement training are considered immigration officers that have the authority to use non-deadly force when appropriate). Also, Sigalovskaya's own complaint acknowledges that HSI is a part of U.S. Immigration and Customs Enforcement ("ICE"). Am. Compl. ¶ 7. Accordingly, it is not unreasonable—as Sigalovskaya suggests—for § 287.10 to apply to HSI special agents, even though it is listed under the subchapter of DHS's regulations governing "Immigration Regulations."

Lastly, Sigalovskaya argues that there is no reason to question whether the judiciary is less equipped to weigh the costs and benefits of allowing her false arrest and malicious prosecutions claims to proceed to trial given that federal courts, particularly those within this Circuit, are uniquely qualified to adjudicate constitutional claims against law enforcement officials based on allegations of fabricated evidence. A similar argument was rejected by the Supreme Court in *Egbert*. There, the Court held that the Ninth Circuit erred in extending *Bivens* to

the plaintiff's First Amendment claim on the basis that "retaliation claims are 'well-established,'" explaining that "just because plaintiffs often plead unlawful retaliation to establish a First Amendment violation is not a reason to afford them a cause of action to sue federal officers for money damages." *Egbert*, 596 U.S. at 499–500. Thus, following *Egbert*, Sigalovskaya's argument regarding "this Circuit's jurisprudence on fabricated evidence claims," Appellant's Br. at 42, is not a basis to provide a *Bivens* remedy for her claims. For these reasons, I find that there are special factors counseling against extending *Bivens* to Sigalovskaya's false arrest and malicious prosecution claims.

*    *    *

Had Sigalovskaya's claims been asserted against state officers, she would have an explicit damages remedy afforded by 42 U.S.C. § 1983. But in the more than fifty years since the Supreme Court decided *Bivens*, "Congress [has] not provide[d] a specific damages remedy for plaintiffs whose constitutional rights were violated by agents of the Federal Government." *Abbasi*, 582 U.S. at 130. Against this backdrop, the Supreme Court has made clear that expanding the *Bivens* remedy is a "disfavored judicial activity," *id.* at 135 (internal quotation marks omitted), and that courts should be wary of doing so when "there is *any*

23

rational reason (even one) to think that *Congress* is better suited to weigh the costs and benefits of allowing a damages action to proceed," *Egbert*, 596 U.S. at 496 (internal quotation marks omitted).  Remaining faithful to the Supreme Court's firm guidance, I conclude that, for the reasons stated above, Sigalovskaya has no cause of action in this case and her amended complaint was properly dismissed.

Myrna Pérez, *Circuit Judge,* concurring:

We may dispose of this case for the identical reason that the Supreme Court set forth in *Egbert v. Boule*, 596 U.S. 482 (2022). Sigalovskaya, like the plaintiff in *Egbert*, may avail herself of a particular remedial structure set forth within the Department of Homeland Security's ("DHS's") regulations. I therefore concur in affirming the grant of judgment on the pleadings to the defendants in this case. Sigalovskaya's false-arrest claim otherwise likely presents no new *Bivens* context, but we need not consider that question today.

Sigalovskaya's claims may not proceed here because the Supreme Court has instructed that where "Congress has provided alternative remedies for aggrieved parties," that alternative remedial structure "*independently* foreclose[s] a *Bivens* action." *Id*. at 497 (emphasis added). "So long as Congress or the Executive has created a remedial process that it finds sufficient to secure an adequate level of deterrence, the courts cannot second-guess that calibration by superimposing a *Bivens* remedy." *Id*. at 498. Put differently, an alternative remedial scheme "alone" is a "special factor" under the Supreme Court's *Bivens* jurisprudence that terminates the action. *Id*. at 493 (quoting *Ziglar v. Abbasi*, 582 U.S. 120, 137 (2017)).

Here, Congress has provided for just such an alternative remedial scheme—the very same one that the Supreme Court found independently dispositive in

*Egbert*.  Under 8 C.F.R. § 287.10(a), DHS must "expeditiously" investigate "[a]lleged violations of [its] standards for enforcement activities."  *See also id*. § 287.10(b) (establishing a grievance process).  Given that this regulation "independently foreclose[d]" relief in *Egbert*, *see* 596 U.S. at 497, that is enough to end our inquiry here.  *See Sigalovskaya v. Braden*, No. 15-CV-34 (LDH), 2023 WL 6385761, at *6 (E.D.N.Y. Sept. 29, 2023) (conducting a similar analysis below).[1]

If I were to consider whether Sigalovskaya's suit presents a "new context" today, I would find no meaningful daylight between Sigalovskaya's false-arrest claim and the claim presented in *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971).[2]  For over fifty years, the Supreme Court has repeatedly declined to overrule *Bivens*.  *See Egbert*, 596 U.S. at 490–91; *Hernández v. Mesa*, 589 U.S. 93, 103 (2020); *Ziglar*, 582 U.S. at 131, 134.  Rather, plaintiffs may bring *Bivens* actions against federal officers who have committed

---

[1] The investigation and grievance mechanisms described in § 287.10 apply to "immigration officer[s]" in the Department of Homeland Security.  *See* 8 C.F.R. § 287.8; *see id*. § 287.10(a) (incorporating § 287.8 by reference).  In consulting a DHS organizational chart, the defendant Homeland Security Investigations agents are organized under DHS's Immigration and Customs Enforcement ("ICE").  *See Organizational Structure*, U.S. Immigr. & Customs Enf't, https://www.ice.gov/leadership/organizational-structure [https://perma.cc/3G2Y-B6XM] (last visited Nov. 14, 2024).  In our procedural posture, we may properly take judicial notice of this fact.  *See Rynasko v. New York Univ.*, 63 F.4th 186, 191 n.4 (2d Cir. 2023) ("When considering a motion made pursuant to Rule 12(b)(6) [or Rule 12(c)] we may take judicial notice of documents from official government websites." (internal quotation marks and citation omitted)).

[2] In contrast, Sigalovskaya's malicious-prosecution claim, as her counsel conceded at oral argument, appears to raise a new context.  *See* Oral Arg. Audio Recording at 8:41–9:30.

certain alleged constitutional violations that resemble *Bivens* claims the Court has previously recognized. *See Egbert*, 596 U.S. at 490–92.

In *Bivens*, the plaintiff claimed that the defendant agents made a warrantless entry into his apartment, searched it, and arrested him on narcotics charges. 403 U.S. at 389. He alleged, among other things, that the arrest was effectuated without probable cause, in violation of the Fourth Amendment. *Id*. Sigalovskaya's complaint here hews closely to those facts and to that legal claim. That she additionally alleged that the government fabricated evidence in effecting her false arrest does not transform that claim into a legally distinct one for purposes of any "new context" inquiry. Respecting precedent, we must not parse *Bivens* actions before us with so discerning an eye that we fail to heed the Court's instruction that *Bivens* claims may, under certain previously recognized contexts, proceed. Here, at bottom, Sigalovskaya, just like Bivens, alleged that federal government agents lacked probable cause, but proceeded with her arrest.

The Supreme Court has repeatedly recognized *Bivens* actions in the contexts it has delineated, where special factors do not counsel otherwise. Here, the alternative remedial structure is a special factor that independently precludes relief. I would decide this case based solely on the DHS regulation that sufficed in

*Egbert* and leave to another panel, on another day, the appropriate manner for

going about a "new context" inquiry where such a remedial structure is absent.

GERARD E. LYNCH, *Circuit Judge*, dissenting in part:

Sigalovskaya's false arrest claim does not present a new context. And because that is sufficient for her false arrest claim to survive Defendants' motion for judgment on the pleadings, I respectfully dissent in part from the judgment affirming the dismissal of that claim. I concur in the judgment insofar as it affirms the dismissal of Sigalovskaya's claim for malicious prosecution, as allowing that claim would extend *Bivens* to a new context and special factors counsel against recognizing such a claim.

To determine whether Sigalovskaya has alleged a viable *Bivens* claim, we first must assess whether her claim arises in "a new *Bivens* context." *Egbert v. Boule*, 596 U.S. 482, 492 (2022) (internal quotation marks omitted). For a case to present a new context, the case must be "different in a *meaningful* way from previous *Bivens* cases decided by [the Supreme] Court." *Ziglar v. Abassi*, 582 U.S. 120, 139 (2017) (emphasis added).

Like Judge Pérez, I see no meaningful difference between Sigalovskaya's false arrest claim and the unreasonable search and seizure claim in *Bivens* because just like the plaintiff in *Bivens*, Sigalovskaya alleges that her arrest was effectuated "without probable cause" in violation of the Fourth Amendment. Joint App'x 54 ¶ 94; *Bivens v. Six Unknown Named Agents of Fed. Bureau of*

*Narcotics*, 403 U.S. 388, 389 (1971) (characterizing Bivens's complaint as alleging

that his "arrest was made without probable cause"). The fact that the lack of

probable cause in this case stemmed from Defendants' alleged fabrication of

evidence whereas the lack of probable cause in *Bivens* did not is of no moment.

Sigalovskaya's arrest violated the Fourth Amendment, if the allegations in her

amended complaint are true, because the arresting agents – just like the agents in

*Bivens* – lacked evidence sufficient to create probable cause to believe that she

committed a crime. That Defendants *pretended* that they did have such evidence

is not a *meaningful* difference because the core issue – an arrest without probable

cause – is the same in both cases.[1]

To conclude that such a factual difference is sufficient for Sigalovskaya's

false arrest claim to present a new context, as Judge Lee suggests, would

effectively overrule *Bivens* without saying so. That is because it is highly

improbable that any case will present the same exact facts that were present in

*Bivens*. Accordingly, imbuing minute factual distinctions with legal significance

---

[1] Nor does this case present a new context, as Defendants argue, because the arresting agents were from the Department of Homeland Security, while the federal agents in *Bivens* were from the Federal Bureau of Narcotics. *See Bivens*, 403 U.S. at 389. But as Judge Lee correctly points out, the Federal Bureau of Narcotics does not exist anymore. Accordingly, if *Bivens* is still good law, the liability it creates cannot be escaped merely by changing the name of the agency for which the officers work, any more than by changing the shape or colors of their badges.

does not seem faithful to the Supreme Court's admonition that *Bivens* is still good law, *see Egbert*, 596 U.S. at 491, and I share the concerns voiced in the dissent in *Edwards v. Gizzi* that drawing fine factual distinctions to conclude a case presents a new context in effect overrules *Bivens* "*sub silentio*." 107 F.4th 81, 90–91 (2d Cir. 2024) (Parker, J., dissenting).

Because Sigalovskaya's false arrest claim does not present a new context, I would not reach the second step of the analysis, which requires us to evaluate "if there are special factors indicating that the Judiciary is at least arguably less equipped than Congress to weigh the costs and benefits of allowing a damages action to proceed." *See Egbert*, 596 U.S. at 492 (internal quotation marks omitted). The Supreme Court has made clear that the purpose of the special factors analysis is to determine if there is a "reason to pause before applying *Bivens* in a *new context* or to a new class of defendants." *Hernandez v. Mesa*, 589 U.S. 93, 102 (2020) (emphasis added). It therefore follows that if a case does not present a new context, there is no need to reach the second step of the analysis. I accordingly disagree with Judge Pérez that the mere presence of a special factor, here, an alternative remedial regime, is sufficient to preclude a *Bivens* remedy for Sigalovskaya's false arrest claim. Because *all* law enforcement agencies have

3

internal disciplinary procedures for investigating and punishing rogue agents, that rationale too would represent a de facto overruling of *Bivens*.

It is telling that here, as in *Edwards*, a majority of the panel dismisses a *Bivens* claim without being able to agree on a rationale for distinguishing *Bivens*. *See Edwards*, 107 F.4th at 82 (Park, J. concurring): *id.* at 86–87 (Robinson, J., concurring). I sympathize with my colleagues' plight. They are doing what the Supreme Court appears to want them to do, when the Supreme Court has not offered a coherent, intellectually honest basis for reflexively distinguishing cases that are "materially indistinguishable" from *Bivens* itself, *see Egbert*, 596 U.S. at 513 (Sotomayor, J., concurring in part and dissenting in part), while solemnly stating that *Bivens* is still good law, *see id.* at 491; *Ziglar*, 582 U.S. at 134. Four Justices recognized in *Egbert* that this charade is untenable. *See Egbert*, 596 U.S. at 503–04 (Gorsuch, J., concurring); *id.* at 526–27 (Sotomayor, J., joined by Breyer and Kagan, JJ., dissenting in part and concurring in part).

I cannot say it better than Judge Parker so eloquently put it in *Edwards*:

> [T]he fact that the Supreme Court continues to express serious doubts about *Bivens*' future does not, in my view, grant a license to *sub silentio* do for the Supreme Court what it has thus far been unwilling to do itself. If the Supreme Court plans to take away important protections against constitutional violations and allow

4

federal officials to act unconstitutionally without consequence unless and until Congress acts, then it should face the nation and say as much. It should not delegate that work to us.

107 F.4th at 91.

I therefore respectfully dissent from the judgment affirming the dismissal of Sigalovskaya's false arrest claim.